# IN THE COURT OF APPEALS OF IOWA

No. 18-0416
Filed June 20, 2018

**IN THE INTEREST OF R.B.,**
**Minor Child,**

**S.C., Mother,**
        Appellant.
_____

        Appeal from the Iowa District Court for Webster County, Angela L. Doyle,

District Associate Judge.


        A mother appeals the termination of her parental rights to her child.

**AFFIRMED.**


        Jessica L. Morton of Bruner, Bruner & Reinhart LLP, Carroll, for appellant

mother.

        Thomas J. Miller, Attorney General, and Anagha Dixit, Assistant Attorney

General, for appellee State.

        Douglas E. Cook of Cook Law Office, Jewell, guardian ad litem for minor

child.


        Considered by Vaitheswaran, P.J., and Potterfield and Tabor, JJ.

**VAITHESWARAN, Presiding Judge.**

A mother appeals the termination of her parental rights to a child, born in 2010. She contends (1) the record lacks clear and convincing evidence to support the grounds for termination cited by the district court, (2) the department of human services failed to make reasonable efforts toward reunification with the child, and (3) she should have been afforded additional time to reunify or the court should have placed the child in a guardianship in lieu of terminating her parental rights.

*I.* The district court terminated the mother's parental rights pursuant to several statutory provisions.[1] We may affirm if we find clear and convincing evidence to support any of the provisions. *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). On our de novo review, we are persuaded termination was warranted under Iowa Code section 232.116(1)(f) (2017), which requires proof of several elements, including proof the child could not be returned to the parent's custody.

The mother has a history of drug abuse and criminal activity. The department became involved following allegations of her drug use while caring for the child. The mother tested positive for several drugs and the child was placed with the maternal grandparents pursuant to a safety plan. The district court subsequently adjudicated the child in need of assistance and transferred custody to the department. The child remained with the grandparents throughout the proceedings.

Meanwhile, the mother was arrested for theft and two drug-related crimes. The district court adjudged her guilty, imposed suspended sentences, and placed

---

[1] A hearing on a petition to terminate the father's parental rights was scheduled for a later date.

her on probation. A later probation-administered test was positive for methamphetamine and marijuana. The mother also incurred new criminal charges.

The mother failed to comply with the department's drug treatment recommendations or follow through with the department's drug testing schedule. She was unsuccessfully discharged from inpatient or outpatient drug treatment on four occasions and from a Drug Treatment Court program.

The mother ultimately had her probation revoked. She was imprisoned in the fall of 2017 and remained incarcerated at the time of the termination hearing three months later. She did not participate in the termination proceedings.

The department employee overseeing the case testified the mother's "soonest recall date" would be nine months after the date of the termination hearing. The child indisputably could not be returned to her custody. *See In re A.M.*, 843 N.W.2d 100, 111 (Iowa 2014) (holding the State must prove the child "cannot be returned to the parents' custody at the time of the termination hearing" (quoting *D.W.*, 791 N.W.2d at 707)).

*II.* The mother contends the department failed to make reasonable efforts toward reunification because it did not facilitate visits with the child at the prison. *See In re L.M.*, 904 N.W.2d 835, 839 (Iowa 2017) ("The State must show reasonable efforts as a part of its ultimate proof the child cannot be safely returned to the care of a parent." (quoting *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000))). The department caseworker conceded this service was not provided. But the mother "voiced no objection" to the department's failure to provide this service. *See id.* at 840. As the district court stated, the mother "has not requested visitation

from [the department] since her incarceration . . . and has not objected to the failure of [the department] to provide for visitation during her incarceration." The court also noted the mother had telephone interactions with the child three times a week, "failed to cooperate with the services previously offered," and did not request "additional services or assistance." Under these circumstances, we conclude the department satisfied its reasonable efforts mandate.

***III.*** The mother suggests "[i]t would be in the child's best interest that [she] be given additional time to reunify with [the child]" and faults the department for failing to "consider [a] guardianship for [the child]."

The district court rejected both options. The court stated an extension of time was not warranted because the mother "would have much to prove after discharge of her sentence before resuming custody of the child." The court also noted the mother's "long history of unaddressed substance abuse militate[d] in favor of termination," as did the child's bond with the grandparents and their desire to adopt the child. We fully concur in this assessment.

We affirm the termination of the mother's parental rights to the child.

**AFFIRMED.**

Potterfield, J., concurs; Tabor, J., concurs specially.

**TABOR, Judge** (concurring specially)

I agree with the outcome reached by the majority, but write separately to raise a concern about the Department of Human Services (DHS) case worker's failure to contact the mother while she was incarcerated at the Iowa Correctional Institution for Women (ICIW) in Mitchellville. The mother was sent to prison on a probation violation in October 2017. At the January 2018 termination hearing, the DHS social worker testified she had not contacted the mother since October; nor had the mother contacted her. No one contacted the mother's prison counselor or evaluated the possibility of visitation in the prison. But the record revealed the maternal grandparents and R.B. were able to visit the mother in the jail before transfer to prison. And the maternal grandmother testified the mother calls to talk on the phone with R.B. five times per week. It does not appear the DHS or the family safety, risk, and permanency (FSRP) worker made any real effort to assess the feasibility of regular supervised visits between R.B. and his incarcerated mother. *See In re S.J.*, 620 N.W.2d 522, 525 (Iowa Ct. App. 2000) ("Although we agree a parent's imprisonment may create difficulties in providing reunification services, we are not convinced imprisonment absolves the department of its statutory mandate to provide reunification services under all circumstances."). As our supreme court noted in *In re L.M.*, 904 N.W.2d 835, 840 n.9 (2017), "[w]hether visitation for an incarcerated parent should be ordered as a reasonable effort toward reunification when timely raised by the parent will depend on the circumstances of each case." Here, it is difficult to see how the DHS could make a well-informed recommendation to the juvenile court regarding visitation

arrangements at the ICIW, when the worker ceased all outreach to the incarcerated mother.

Parental incarceration has a devastating impact on the children who are left behind. *See* Amy B. Cyphert, *Prisoners of Fate: The Challenges of Creating Change for Children of Incarcerated Parents*, 77 Md. L. Rev. 385, 386 (2018) (citing Annie E. Casey Found., *A Shared Sentence: The Devastating Toll of Parental Incarceration on Kids, Families and Communities* 1–7 (2016), http://www.aecf.org/m/resourcedoc/aecf-asharedsentence-2016.pdf). In Iowa, parents' attorneys must ensure their incarcerated clients voice their desire to have visitation, if appropriate. But DHS and FSRP workers must not operate on the assumption that incarcerated parents are irredeemable and not worthy of pursuing reasonable efforts toward family reunification.