# IN THE COURT OF APPEALS OF IOWA

No. 19-1080
Filed November 6, 2019

**IN THE INTEREST OF T.M.,**
**Minor Child,**

**M.M., Father,**
        Appellant,

**E.H., Mother,**
        Appellant.

_____

Appeal from the Iowa District Court for Pottawattamie County, Charles D. Fagan, District Associate Judge.

Parents separately appeal the juvenile court order terminating their parental rights. **AFFIRMED ON BOTH APPEALS.**

Daniel J. McGinn of McGinn, Springer & Noethe, Council Bluffs, for appellant father.

Roberta J. Megel of State Public Defender Office, Council Bluffs, for appellant mother.

Thomas J. Miller, Attorney General, and Meredith L. Lamberti, Assistant Attorney General, for appellee State.

Marti Nerenstone, Council Bluffs, attorney and guardian ad litem for minor child.

Considered by Bower, C.J., and May and Greer, JJ.

**BOWER, Chief Judge.**

A mother and father separately appeal the juvenile court decision terminating their parental rights. The mother claims the evidence does not support termination, the child can be returned to her custody, and termination is not in the best interests of the child. The father claims the court should have granted him additional time for reunification, he was not provided residential substance-abuse treatment, and termination is not in the best interests of the child. We affirm.

## I.    Background Facts & Proceedings

E.H., mother, and M.M., putative father,[1] are the parents to T.M., born in 2017. The parents have been in a long-term relationship since 2008. They had an older child together, and their parental rights were terminated as to that child in 2016. Throughout these proceedings, the parents reported they were separating on a number of occasions but the separations did not happen or did not last very long.

On October 6, 2017, the Iowa Department of Human Services (DHS) received a report following the father's arrest indicating he was using methamphetamine in the home while taking care of the child. The father was in jail at the time DHS began its investigation. The mother took a drug test, which came back negative for illegal drugs, and the child was allowed to remain in the mother's home. On December 4, the juvenile court adjudicated the child in need of assistance (CINA).

---

[1] The child's father is not named on the birth certificate. The court never ordered a paternity test to affirmatively establish whether M.M. is the biological father of T.M. No other father was alleged, and the court terminated the parental rights of any other potential father.

In January 2018, the court determined the mother regularly allowed methamphetamine addicts to stay in her apartment and take care of the child while she worked. The child tested positive for methamphetamine. This incident led to a criminal child-endangerment charge against the mother, to which she pleaded guilty on June 26, 2018. It also led to the child being removed from the home and placed in foster care with the family who is caring for the child's older sibling.

The mother received a suspended sentence and supervised probation. She successfully completed probation just before the termination hearing. The mother has held a full-time job for over six years and has stable housing. She often has at least one roommate to help pay the rent. The mother progressed to semi-supervised visitation outside the home with T.M.

When the father was released from prison in January 2018, he moved back in with the mother. The father had an outstanding arrest warrant beginning in June 2018 and had been banned from the apartment complex. Yet, the mother continued to allow the father to stay in the apartment while telling Family Safety, Risk, and Permanency (FSRP) workers the father had moved out.

Starting in November 2018, the mother refused to allow FSRP to examine the home for purposes of having visits there, stating the home was not clean enough to be ready for the child. Home visits partially resumed in March 2019 and were fully supervised due to the father's presence in the home. The mother cooperated with some services—completing mental-health and substance-abuse evaluations. She attended mental-health therapy for a short time in late 2018, but stopped in December 2018 due to a lack of insurance.

The father has a long-term substance-abuse problem. He did not have employment throughout the case. He was in jail from October 2017 to January 2018. An active warrant for his arrest for probation violations was in effect from June 2018 to May 2019. He did not attend the majority of his scheduled visitation—including having no visits with the child from June 2018 until March 2019—and participated minimally at the visits he did attend. The father lied during an early substance-abuse evaluation and to the court. He refused to complete additional evaluations or drug screens and acted in a controlling manner with the mother. His probation was revoked following his unsuccessful discharge from substance-abuse treatment, admitted use of methamphetamine, and missed probation appointments. He was incarcerated in March 2019 and remained so at the time of the termination hearing.

On September 10, 2018, DHS requested the permanency goal switch from reunification to termination of parental rights. On April 9, 2019, the State filed a petition to terminate the parents' rights. The termination hearing occurred on June 5, 2019. The court terminated the mother's parental rights pursuant to Iowa Code section 232.116(1)(e), (h), and (*l*) (2019). The father's rights were terminated pursuant to paragraphs (e), (g), (h), and (*l*). Both parents appeal.

## II.     Standard of Review

We review termination-of-parental-rights cases de novo. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). "There must be clear and convincing evidence of the grounds for termination of parental rights." *Id.* Clear and convincing evidence means there are "no serious or substantial doubts as to the correctness of conclusions of law drawn from the evidence." *Id.* (citation omitted). The

paramount concern in termination proceedings is the best interests of the child. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

### III. Analysis

**A. Mother.** The mother contests all three grounds for termination. We note paragraph "e" requires that the parent has not maintained significant and meaningful contact with the child and no reasonable efforts to resume care—here, the mother *did* attend almost all of her visitations and maintained some contact. *See* Iowa Code § 232.116(1)(e). Paragraph "*l*" requires the parent have "a severe substance-related disorder" presenting a danger to self or others. *Id.* § 232.116(1)(*l*). The juvenile court stated the mother "most likely does not have a drug problem," and we do not believe the State proved by clear and convincing evidence the mother had a severe substance-abuse disorder. That said, we only need find one ground supported by clear and convincing evidence to affirm the juvenile court's termination order. *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). Therefore, we turn to the evidence supporting paragraph "h".

The first three elements for termination under section 232.116(1)(h) have been clearly met. First, the child is under three years of age. *See* Iowa Code § 232.116(1)(h)(1). Second, the child was adjudicated CINA on December 4, 2017. *See id.* § 232.116(1)(h)(2). Third, the child had been removed from the parents' custody since January 2018—a period of more than six consecutive months at the time of the termination hearing—with no trial period back in the home. *See id.* § 232.116(1)(h)(3). The mother claims the State did not prove by clear and convincing evidence the child could not safely return to her care at the present. *See id.* § 232.116(1)(h)(4).

After noting the mother likely did not have a drug problem, the juvenile court stated the mother "time and time again . . . makes incredibly poor decisions regarding who she allows to care for her child and who she allows to remain in her life." The court went on to note the mother fails to recognize the danger presented by having active users around and caring for the child.

Throughout this case, the mother has chosen to maintain her relationship with the father, despite the relationship contributing to the termination of her rights to her older child and his drug use factoring into the removal of T.M.[2] She allowed persons she knew were using drugs to stay in her home and take care of the child with no supervision, resulting in her child-endangerment conviction. She facilitated the father avoiding arrest by allowing him to stay in the apartment without letting FSRP check the house even though her actions impaired her reunification with the child. Shortly before the termination hearing, she again had persons staying in her apartment she knew were unlikely to pass a DHS background check. In short, she has not demonstrated the ability to recognize her companions' inappropriate behaviors, to place the child's needs first, and to maintain a safe home for the child.

We find clear and convincing evidence supports the termination of the mother's rights under Iowa Code section 232.116(1)(h), and termination is in the best interests of the child.

**B.    Father**. The father does not contest the existence of grounds for termination. He claims the court should have granted him additional time to reunite with the child, he was not provided with residential substance-abuse treatment,

---

[2] At the termination hearing, the mother testified their relationship ended at the time of the father's most recent arrest. The juvenile court found her testimony not credible.

and termination is not in the best interests of the child. Until termination was imminent, the father showed no interest in the services offered to help him address his substance-abuse issues. He habitually blamed others for his own problems and repeatedly failed to acknowledge his drug use. Although the State must show reasonable efforts to reunify the family, a parent has a duty to request services early in the process with adequate time to achieve changes. *See In re L.M.*, 904 N.W.2d 835, 839–40 (Iowa 2017). "[P]arents have a responsibility to object when they claim the nature or extent of services is inadequate," and failure to do so waives the issue at the time of termination. *Id.* The father did not request help getting into substance-abuse treatment and actively refused to seek treatment. This issue is waived.

Over the twenty months the family was under DHS supervision, the father showed little to no interest in the child, including a period of nine months without attending visitation. At the visits he did attend, he left the responsibility of caring for the child to the mother. We look to a parent's past performance as an indicator of the quality of care the parent might provide in the future. *J.E.*, 723 N.W.2d at 798. Under these circumstances, additional time to achieve reunification is unwarranted, and termination of the father's parental rights is in the child's best interests.

**AFFIRMED ON BOTH APPEALS.**