# IN THE COURT OF APPEALS OF IOWA

No. 19-1657
Filed January 23, 2020

**IN THE INTEREST OF C.M., A.R., and A.A.,**
**Minor Children,**

**T.R., Mother,**
 Appellant.

_____

 Appeal from the Iowa District Court for Woodbury County, Mark C. Cord III,

District Associate Judge.


 A mother appeals the termination of her parental rights. **AFFIRMED.**


 Joseph W. Kertels of Juvenile Law Center, Sioux City, for appellant mother.

 Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant

Attorney General, for appellee State.

 Molly Vakulskas Joly of Vakulskas Law Firm P.C., Sioux City, attorney and

guardian ad litem for minor children.


 Considered by Bower, C.J., and May and Greer, JJ.

**BOWER, Chief Judge.**

A mother appeals the termination of her parental rights. She claims the children could have been returned to her care at the time of the hearing, she should have been granted an additional six months to achieve reunification with the child, and the department of human services (DHS) did not provide reasonable efforts to reunify the family. We find the grounds for termination have been established by clear and convincing evidence, an extension is not warranted, and the State has made reasonable efforts to reunify the mother and children. We affirm.

## I.     Background Facts & Proceedings

T.R. is the mother of A.A., A.R., and C.M. J.R., the mother's husband, is the father of A.A., who was born in 2012, and A.R., who was born in 2016. He is the legal father of C.M., who was born in 2019; however, D.M. is the biological father of C.M.[1]

In 2017, T.R. and J.R. moved to Iowa from Pennsylvania with the older two children. The mother moved out of the family residence in June 2017, leaving the children with their father. On December 12, J.R. was awarded temporary custody of the children. A no-contact order was entered protecting the mother from J.R. due to domestic violence, some of which occurred in the children's presence. The mother did not provide any support and had minimal contact with the children after moving out. By February 2018, the mother was living with and attempting to get pregnant by her paramour, D.M.

---

[1] Both fathers' parental rights were also terminated. Neither appeals.

On February 15, 2018, J.R. was arrested for child endangerment after caring for A.R. while highly intoxicated. The children were placed in the mother's care.

On March 12, the mother informed DHS she was overwhelmed trying to care for the children and needed to address her own mental health. DHS provided in-home services. Yet, in April, the mother asked DHS to place the children in foster care. On April 18, A.A. and A.R. were removed from the mother's care. They were adjudicated children in need of assistance (CINA) on May 31.

The mother checked herself into a mental-health stabilization unit for two days shortly after the removal. The mother has a long history of mental-health issues and has been diagnosed with several mental-health disorders. The mother had been hospitalized several times in the past for mental-health care. She participated in mental-health therapy and medication management throughout the juvenile proceedings.[2]

In January 2019, the mother gave birth to C.M., who was removed from parental care due to the mother's continuing mental-health issues and the biological father's incarceration. The mother's therapist expressed concerns relating to the mother's stability and ability to care for a newborn. C.M. was adjudicated CINA on February 8.

The mother did not progress for the first several months of services, including her continuing relationship with her paramour who had recently returned to prison due to drug use, her potential eviction due to not paying her rent for

---

[2] The mother took medication for her mental-health and chronic pain.

several months, her inability to maintain employment, and her refusal to sign releases relating to her mental health. In early 2019, after the youngest child was born, the mother consistently attended her therapy sessions, was able to hold down a part-time job for a few months, and had relatively stable housing with help from community programs. The mother also went back to school to be a certified nursing assistant (CNA).

Initially, the mother had visitation with the older two children once a week for three hours. In October 2018, following a family team meeting, the mother's visitation was decreased to two hours per week due to her lack of progress in establishing stable housing and employment and consistently attending mental-health treatment. After the youngest child was born, the mother had visitation with all three children once a week and an additional two-hour visit with the youngest child. Following a request by the mother in April 2019 to increase her visitation, her visits with the infant were expanded to three hours. The visits were fully supervised by Family Safety, Risk, and Permanency (FSRP) service providers.

A termination of parental rights petition was filed on June 19. At the time of the July 22 hearing, the mother was expecting to obtain her CNA certification shortly.

Throughout the juvenile proceedings, the mother did not communicate well with DHS or FSRP service providers. She was unable to maintain steady employment and struggled with budgeting and meeting her own financial needs, though she completed a budgeting class shortly before the termination hearing. The mother repeatedly allowed persons not approved by DHS around the children—including her paramour and, later, friends from church—and would put

her own needs above those of the children. She struggled to adequately supervise all three children during visitation.

On September 17, the court terminated the mother's parental rights to all three children.[3] The mother appeals.

## II. Standard of Review

We review termination-of-parental-rights cases de novo. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). "We will uphold an order terminating parental rights if there is clear and convincing evidence of grounds for termination under Iowa Code section 232.116. Evidence is 'clear and convincing' when there are no 'serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence.'" *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). The paramount concern in termination proceedings is the best interests of the children. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

## III. Analysis

**A. Grounds for termination.** The juvenile court terminated the mother's parental rights on two independent grounds for each child. We may affirm on any ground we find supported by clear and convincing evidence. *D.W.*, 791 N.W.2d at 707. We find clear and convincing evidence supports the termination of the mother's rights under Iowa Code section 232.116(1)(f) as to the oldest child and 232.116(1)(h) as to the younger children.

---

[3] The court terminated the mother's rights under Iowa Code section 232.116(1)(d), (f), and (h) (2019). Her rights to all three children were terminated under paragraph "d," while "f" relates only to A.A., who is older than four years of age; and paragraph "h" relates to A.R. and C.M., being three years of age or younger.

The mother does not contest the first three elements of each statutory provision have been met—requisite age of the child, prior adjudication as CINA, and removal from the parents for the statutory period. *See* Iowa Code § 232.116(1)(f)(1)–(3), (h)(1)–(3). Rather, she contests the evidence shows the children could not be returned to her at the time of the hearing. *See id.* § 232.116(1)(f)(4), (h)(4).

The mother's history in this case prompts concerns of her ability to care for the children. *See A.B.*, 815 N.W.2d at 778. ("[E]vidence of the parent's past performance . . . may be indicative of the quality of the future care that parent is capable of providing." (citation omitted)). She had minimal contact with the older children for months after leaving their father—and then, taking custody only after the father's arrest for child endangerment. Unfortunately, she soon turned to DHS to have the children placed in foster care because she was unable to cope with them while at the same time trying to get pregnant by D.M., who was newly paroled.

The mother has struggled throughout the juvenile proceedings with prioritizing her children. Her relationship with D.M., her church community, and her schooling often affected her caring for and spending time with the children.[4] In her interactions with DHS, FSRP, and the foster families, the mother's focus has been on what she wanted to happen and the people she wanted around her rather

---

[4] The mother and D.M. testified they were no longer in a relationship at the time of the termination hearing, but they continued to communicate on a regular basis and the mother had been wearing what appeared to be an engagement ring less than a month before the hearing.

than what would be best for the children. We also note the FSRP reports show the mother has struggled to care for all three children on her own during her visits.

The mother participated in mental-health treatment but continued to be unaware of how her choices affected her children and her chances of reunification. Her therapist testified at the termination hearing as to the mother's progress in her mental-health treatment but admitted she needed to improve her accountability and her relationships with men and gain better control over her emotions.

The mother's employment history was very sporadic. At the time of the termination hearing, the mother had recently lost her job and was only working a few hours a week through a temporary staffing agency.[5] The mother had completed her nursing coursework but had not yet passed the certification test. She often relied on community services to help her pay her rent and expenses, and DHS was not certain how her bills were paid from month to month.

Reviewing the evidence, we conclude the mother is not able to adequately care for the children at this time.

**B.	Six-month extension.** The mother claims that with additional time, she could be reunified with the children. She states on appeal, "There is no harm to the children in giving her additional time," and argues additional time for reunification would be in the best interests of the children. We disagree.

In determining the best interests of the children, we give primary consideration to "the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and

---

[5] The mother failed to inform FSRP or DHS when she lost her job a few weeks before the termination hearing.

emotional conditions and needs of the child[ren]." Iowa Code § 232.116(2). The court may continue a placement for an additional six months only if the need for removal will no longer exist at the end of the extension. *Id.* § 232.104(2)(b); *see In re A.A.G.*, 708 N.W.2d 85, 92 (Iowa Ct. App. 2005). In order to grant the extension, the court must "enumerate the specific factors, conditions, or expected behavioral changes" that support the determination the removal could end in six months. Iowa Code § 232.104(2)(b). The juvenile court determined an extension was not warranted and the children were in need of permanency now.

"We do not gamble with the children's future by asking them to continuously wait for a stable biological parent, particularly at such tender ages." *D.W.*, 791 N.W.2d at 707 (internal quotation marks and citations omitted). "Parenting cannot be turned off and on like a spigot. It must be constant, responsible, and reliable." *In re L.L.*, 459 N.W.2d 489, 495 (Iowa 1990).

The older children are already showing the effects of the turmoil in their lives over the last two years, displaying behavioral problems and developmental delays. The mother has not shown the capacity to be consistent, responsible, and reliable for the children. The children deserve permanency. *See A.B.*, 815 N.W.2d at 778 ("It is simply not in the best interests of children to continue to keep them in temporary foster homes while the natural parents get their lives together." (citation omitted)). We agree with the juvenile court that an additional six-month delay is not in the children's best interests.

**C.     Reasonable efforts.** The mother asserts the State failed to exert reasonable efforts to reunify the family, specifically by failing to increase visitation when she requested it. The court ordered visitation be within the discretion of

DHS. In October 2018, DHS had decreased the mother's visitation with the older children due to her lack of progress. "[T]he nature and extent of visitation is always controlled by the best interests of the child[ren]." *In re M.B.*, 553 N.W.2d 343, 345 (Iowa Ct. App. 1996). The mother struggled to balance caring for all three children during visitation and did not demonstrate the parenting skills necessary to move away from fully-supervised visits. The State offered numerous services over the course of the proceedings and provided the visitation the mother had shown she was able to handle. We conclude the State made reasonable efforts to reunite the mother with the children.

The mother also claims on appeal she should have been provided more family team meetings during the juvenile proceedings. Because she did not seek additional family team meetings prior to the appeal, she has not preserved the issue for review. *See In re L.M.*, 904 N.W.2d 835, 839–40 (Iowa 2017) (noting a parent must object to sufficiency of services early enough in the process for appropriate changes to be made).[6]

We affirm the decision of the juvenile court.

**AFFIRMED.**

---

[6] Family team meetings occurred on July 31, 2018, and May 8, 2019.