IN the INTEREST OF L.M.,
Minor Child,

K.L., Mother, Appellant.

No. 17-0287

Supreme Court of Iowa.

Filed December 8, 2017

Justin R. Wyatt of Woods & Wyatt, P.L.L.C., Glenwood, for appellant.

Thomas J. Miller, Attorney General, Ana Dixit and Tabitha J. Gardner, Assistant Attorneys General, and Carl M. Sonksen, County Attorney, for appellee.

Sarah M. Hart of Reisinger Booth & Associates, P.C. L.L.O., Omaha, Nebraska, guardian ad litem for minor child.

HECHT, Justice.

A mother appealed an order terminating her parental rights. The court of appeals reversed the order, concluding on de novo review that the Iowa Department of Human Services (DHS) failed to prove it made reasonable efforts to reunite the incarcerated mother with her child. On further review, we vacate the decision of the court of appeals and affirm the decision of the juvenile court terminating the mother's parental rights.

## I. Factual Background and Proceedings.

L.M. was born on December 28, 2015. At the time of her birth, she tested positive for methamphetamine, amphetamine, and benzodiazepines. She was promptly removed from the custody of her mother, Katherine, who had a significant history of drug abuse[1] that had previously led to the removal of two older children from her custody. L.M. was placed in foster care.

Katherine participated in supervised visitation with L.M. on January 5, 2016, but failed to attend another scheduled visit three days later. Visitation ceased entirely after Katherine was arrested on January 10 and jailed in Page County on a charge of conspiracy to deliver methamphetamine. She pled guilty to the charge and was sentenced to an indeterminate sentence of ten years in prison on January 29.

On February 4, at a hearing on the State's petition to adjudicate L.M. as a child in need of assistance (CINA), Katherine's counsel raised the subject of visitation, stating, "If there is any possible way we can have any visitation between mom and child, given the setting, I would like to ask for that." A DHS caseworker present at the hearing expressed doubt that face-to-face visits were feasible at the Page County jail. After hearing Katherine's request for visitation and the caseworker's response, the court observed that it did "not find that ... visitation in that [jail] setting is appropriate." In its order issued on February 5, the court nonetheless or-

1. Katherine admitted using methamphetamine during the pregnancy, up to and including the day before L.M. was born.

dered such visitation "as arranged and approved by DHS."

The subject of visitation was again addressed at a dispositional hearing on February 18.[2] A report filed by DHS prior to the hearing recommended that "visitation [remain] at the discretion and direction of the [DHS] and Guardian ad Litem." When the court asked Katherine's counsel if he was in agreement with the recommendation made by DHS, Katherine's counsel answered in the affirmative. No visitation opportunities were arranged for Katherine at the county jail before she was transferred to the Iowa Correctional Institution for Women (ICIW) in Mitchellville on February 26.

A CINA review hearing was held on June 2. The court inquired whether Katherine or the guardian ad litem for L.M. requested any additional services. Although no visitation with L.M. had been provided for Katherine at the ICIW, Katherine's counsel made no request that DHS be ordered to arrange visits.[3]

A permanency hearing was held on September 15. The report filed by DHS summarizing the status of the case recommended the court change the goal of the juvenile proceeding from reunification to termination. Katherine's counsel objected to the change proposed by DHS, noting that Katherine had submitted a letter to the court acknowledging her past mistakes, expressing her desire for reunification with L.M., and requesting more time to make that possible. In addressing the likely longevity of her incarceration, Katherine's letter expressed optimism that she would be released from the ICIW and transferred to a community corrections facility in Council Bluffs in October or November of 2016. The following colloquy occurred during the hearing on the subject of services:

> THE COURT: Are there any other services you're asking for at this time given the fact that [Katherine's] incarcerated?
>
> [COUNSEL FOR KATHERINE]: No, your honor.

The court approved the recommendation of DHS and ordered that the goal of the proceeding should change to termination of parental rights.

A petition for termination of Katherine's parental rights was filed on October 20.[4] The State alleged termination should be ordered under Iowa Code section 232.166(1)(*b*), (*e*), (*h*), and (*j*).[5]

---

**2.** Katherine, who remained in the county jail, was not present in court but was represented by counsel at the hearing.

**3.** The record does not reveal whether facilities suitable for visitation existed at the ICIW.

**4.** The petition also sought termination of the parental rights of L.M.'s father who—as of that date—had not been identified.

**5.** Iowa Code section 232.116(1)(*b*), (*e*), (*h*), and (*j*) provides,

    1. Except as provided in subsection 3, the court may order the termination of both the parental rights with respect to a child and the relationship between the parent and the child on any of the following grounds:

    . . . .

    *b.* The court finds that there is clear and convincing evidence that the child has been abandoned or deserted.

    . . . .

    *e.* The court finds that all of the following have occurred:

    (1) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

    (2) The child has been removed from the physical custody of the child's parents for a period of at least six consecutive months.

    (3) There is clear and convincing evidence that the parents have not maintained significant or meaningful contact with the child during the previous six consecutive months and have made no reasonable efforts to resume care of the child despite being given the opportunity to do so. ...

A hearing on the petition for termination was held on January 19, 2017.[6] In her testimony, Katherine described progress toward the goal of rehabilitation. Katherine's exemplary conduct at the ICIW earned the trust of correctional authorities, who permitted her to leave the correctional facility and work regularly at the department of corrections office in Des Moines. Through this employment, she developed computer and clerical skills, enhancing her future employment opportunities. While serving her sentence at the ICIW, Katherine completed a drug-treatment program addressing her longstanding addiction history.

The record reveals that Katherine's progress on the path toward rehabilitation was recognized by the parole board in its notice of parole issued a few days prior to the termination hearing. Katherine testified she expected to be transferred to a community correction facility in Council Bluffs as soon as it had space for her—likely within thirty days after the termination hearing. Katherine expected the duration of her placement at the community correction facility to be approximately three months.

. . . .
h. The court finds that all of the following have occurred:
(1) The child is three years of age or younger.
(2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
(3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
(4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.
. . . .
j. The court finds that both of the following have occurred:

The juvenile court adopted the recommendation of DHS and ordered the termination of Katherine's parental rights. The court concluded the State had proved its case for termination under section 232.116(1)(b), (e), and (h). Katherine appealed, contending the juvenile court erred in ordering termination of her parental rights (1) under section 232.116(1)(b) because she was not given the opportunity to resume care of L.M., (2) under section 232.116(1)(h) because clear and convincing evidence did not establish L.M. could not be returned to Katherine's custody in the near future, (3) because DHS failed to make reasonable efforts in furtherance of reunification, and (4) because termination is not in L.M.'s best interest.

The court of appeals reversed the termination order, concluding DHS failed "to offer reunification services, specifically visitation with L.M., without establishing that visits with [Katherine] would have been inappropriate or infeasible." Noting Katherine's significant progress toward rehabilitation and the lack of evidence that DHS offered any opportunity for visitation during the incarceration, the court reasoned

(1) The child has been adjudicated a child in need of assistance pursuant to section 232.96 and custody has been transferred from the child's parents for placement pursuant to section 232.102.
(2) The parent has been imprisoned for a crime against the child, the child's sibling, or another child in the household, or the parent has been imprisoned and it is unlikely that the parent will be released from prison for a period of five or more years.
Iowa Code § 232.116(1)(b), (e), (h), (j) (2016).

6. A permanency review hearing in the CINA proceeding was scheduled for the same date. The permanency review and the petition for termination were consolidated and taken up by the court in the same hearing. Katherine participated in the hearing by telephone from the ICIW.

Katherine should be allowed a six-month extension to work toward reunification. We granted the guardian ad litem's application for further review.

## II. Scope of Review.

Our review of this case is de novo. *In re C.H.*, 652 N.W.2d 144, 147 (Iowa 2002).

## III. Analysis.

**A. Grounds for Termination.** The juvenile court ordered termination of Katherine's parental rights under Iowa Code section 232.116(1)(*h*) (2016). This statute authorizes termination upon a finding of the following elements:

(1) The child is three years of age or younger.

(2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

(3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.

(4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

Iowa Code § 232.116(1)(*h*).

Katherine contends the juvenile court erred because the record does not establish that L.M. could not be returned to her custody "now, or in the near future." We disagree. At the time of the termination hearing, Katherine remained at the ICIW. Although she had received notice of her parole, Katherine expected to spend up to thirty more days at the ICIW and then at least ninety additional days at the community correctional facility. Given her history of drug addiction and parenting dysfunction, we conclude Katherine would have much to prove after the discharge of her sentence before resuming custody of L.M. Accordingly, we find clear and convincing evidence that custody of L.M. could not be returned to Katherine at the time of the termination hearing.[7]

**B. Reasonable Efforts.** Katherine contends, and the court of appeals found, termination should not have been ordered because DHS failed to make reasonable efforts toward reunification. In particular, Katherine notes DHS failed to provide a single opportunity for visitation during her incarceration.

"The State must show reasonable efforts as a part of its ultimate proof the child cannot be safely returned to the care of a parent." *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000) (en banc); *see also* Iowa Code § 232.102(7) (providing that if custody is transferred to DHS, it "shall make every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child"). "The reasonable efforts concept would broadly include a visitation arrangement designed to facilitate reunification while protecting the child from the harm responsible for the removal." *In re M.B.*, 553 N.W.2d 343, 345 (Iowa Ct. App. 1996).

Although DHS must make reasonable efforts in furtherance of reunification, with some exceptions not applicable here,[8] parents have a responsibility to ob-

---

7. Having found sufficient evidence supporting the termination of Katherine's parental rights under section 232.116(1)(*h*), we need not address whether the juvenile court erred in ordering termination under subsections (*a*) and (*e*). *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012).

8. *See generally In re C.B.*, 611 N.W.2d at 493 (noting reasonable efforts toward reunifica-

ject when they claim the nature or extent of services is inadequate. *See In re C.B.*, 611 N.W.2d at 493–94. A parent's objection to the sufficiency of services should be made "early in the process so appropriate changes can be made." *Id.* "In general, if a parent fails to request other services at the proper time, the parent waives the issue and may not later challenge it at the termination proceeding." *In re C.H.*, 652 N.W.2d at 148. We conclude Katherine's challenge on appeal to the failure of DHS to provide visitation during her incarceration at the ICIW comes too late. The juvenile court ordered visitation at the discretion of DHS and the guardian ad litem following the hearing on February 4, 2016. In a series of hearings thereafter, the court repeatedly asked whether Katherine objected to the services provided to her by DHS. On each such occasion, Katherine's counsel voiced no objection to the failure of DHS to provide visitation or any other service at the ICIW. Given this failure to object to the denial of visitation, it is not surprising that the record is devoid of evidence informing the court whether appropriate facilities existed at the ICIW for visitation. In the absence of any objection to the failure of DHS to provide for visitation during Katherine's incarceration at the ICIW, the juvenile court made no findings on the question whether the denial of visitation at that facility fell short of the reasonable-efforts standard under the circumstances. On this record, we conclude Katherine's contention on appeal that the standard was not met by DHS must fail because it is untimely.[9]

**C. Best Interests of L.M.** Katherine also contends the juvenile court erred in finding termination is in the best interests of L.M. We acknowledge the substantial progress Katherine has made on her rehabilitation journey. Given the history revealed in the record of this case, the journey is likely a long one and it is far from complete. While Katherine commendably continues over time to intently focus on her sobriety and a healthy reentry to life outside the ICIW, L.M. needs permanency and stability now. As she nears the age of two years, L.M. has never received physical care from Katherine and has not bonded to her. Under the circumstances, we agree with the juvenile court's conclusion that L.M.'s best interests require termination of Katherine's parental rights.

## IV. Conclusion.

We affirm the juvenile court's order terminating Katherine's parental rights under section 232.116(1)(*h*).

**DECISION OF THE COURT OF APPEALS VACATED; DISTRICT COURT ORDER AFFIRMED.**

All justices concur except Cady, C.J., and Wiggins, J., who dissent.

Wiggins, J., joins this dissent.

CADY, Chief Justice (dissenting).

I respectfully dissent. Terminating parental rights in this case results from the misuse of a statute designed to terminate parental rights of those parents who fail to respond to the reasonable efforts by the department of human services to improve

---

tion can be waived under certain circumstances).

9. Our rejection of Katherine's reasonable-efforts argument does not, of course, constitute a determination that, as a matter of law, reasonable efforts in furtherance of reunifica-

tion cannot include visitation arrangements for incarcerated parents. Whether visitation for an incarcerated parent should be ordered as a reasonable effort toward reunification when timely raised by the parent will depend on the circumstances of each case.

parenting skills after a child has been removed from the parents' care for more than twelve months. Here, the mother's parental rights were terminated because she has been in jail or prison almost from the day the child was born. Her imprisonment made it impracticable or difficult for the department of human services to provide visitation and reunification services.

If the state seeks to use a parent's failure to achieve reunification as the grounds for termination, it is obligated to provide reunification services to the parent. *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000) (en banc). Under the reasonable-efforts requirement of termination, a parent must alert the department to the inadequacy of services, but the department must first provide services. *Id.* at 493–94.

Subparagraph (*j*) permits termination of parental rights based on imprisonment of the parent, but only if the length of imprisonment will likely exceed five years. Iowa Code § 232.116(1)(*j*) (2016). The wrong statute has been applied in this case, resulting in an injustice to the mother. Importantly, the mother did respond to the rehabilitation services provided by the department of corrections while in prison, and those services helped her become a model prisoner while waiting for parole. She did what she could under the circumstances to improve her life.

The best interests of the child is the polestar, but we cannot ignore parental rights, even those of a mother who used and trafficked drugs during her pregnancy. Because the department failed to provide reunification services, and the mother was therefore deprived of any opportunity to prove she is able to care for the child, I would affirm the decision of the court of appeals and continue L.M.'s placement for an additional six months to allow the mother to demonstrate rehabilitation and fitness.