**IN THE COURT OF APPEALS OF IOWA**

No. 20-0887
Filed September 23, 2020

**IN THE INTEREST OF Z.L., S.L., C.W., and L.W.,**
**Minor Children,**

**J.W., Father of C.W. and L.W.,**
    Appellant,

**R.S., Mother,**
    Appellant,

**C.L., Father of Z.L.,**
    Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Romonda Belcher,

District Associate Judge.


        A mother and two fathers separately appeal the termination of their parental

rights.  **AFFIRMED ON ALL THREE APPEALS.**


        Bryan Webber of Carr Law Firm, P.L.C., Des Moines, for appellant father of

C.W. and L.W.

        William E. Sales III of Sales Law Firm, P.C., Des Moines, for appellant

mother.

        Jami J. Hagemeier of Drake Legal Clinic, Des Moines, for appellant father

of Z.L.

        Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant

Attorney General, for appellee State.

Nicole Garbis Nolan of Youth Law Center, Des Moines, attorney for minor children C.W. and L.W. and guardian ad litem for all four minor children.

Jessica Chandler of Chandler Law Office, Windsor Heights, attorney for minor child Z.L.

Joel E. Fenton of Law Offices of Joel E. Fenton, PLC, Des Moines, attorney for minor child S.L.

Considered by Bower, C.J., and May and Ahlers, JJ.

**BOWER, Chief Judge.**

A mother and two fathers each appeal the termination of their parental rights. Clear and convincing evidence supports the grounds for termination for all three parents, termination is in the children's best interests, and an extension of time is not warranted. We affirm on all three appeals.

**I. Background Facts & Proceedings**

R.S. is the mother of Z.L, born in 2007; S.L., born in 2008; L.W., born in 2012; and C.W., born in 2015. C.L. is the father of Z.L. Sh.L. is the father of S.L.[1] J.W. is the father of C.W. and L.W.

On July 31, 2018, all four children were removed from the mother's and J.W.'s custody due to domestic violence against one another in front of the children. The violence resulted in a founded child abuse assessment. The mother also tested positive for methamphetamine use.[2] At the time of removal, C.L. was in prison and Sh.L was living out of state.

As a result of the mother's drug use, the younger children tested positive for methamphetamine and amphetamine exposure. The two older children were ultimately placed with a maternal aunt and uncle, and the younger two children were placed in foster care. On September 4, the children were adjudicated as children in need of assistance (CINA).

---

[1] Sh.L. has not appealed the termination of his parental rights.
[2] At the time of L.W.'s birth in 2012, the mother tested positive for methamphetamine and the children were removed from her custody. The children were eventually returned to the mother's care after she completed treatment.

A termination-of-parental-rights and permanency hearing was held on November 18, 2019, and January 21 and February 3, 2020.[3]  As of November 2019, the mother had not completed a substance-abuse program and had been unsuccessfully discharged from an outpatient program for non-attendance. Recommended mental-health treatment had not been pursued.  The mother was unemployed throughout the juvenile court proceedings and financially dependent on her own mother.  She did not have stable housing.  Her visits with S.L. ended in June 2019 after the child expressed not feeling safe around her and made strong statements about not wanting to visit with the mother again.  The mother continued to have one visit a week with Z.L. for the duration of the case.

In March 2019, one of the younger children made allegations the mother and J.W. had abused all four children.  The older children denied they had been abused by the mother and J.W. or witnessed the alleged abuse, and the department of human services (DHS) was unable to confirm it.  At a fully-supervised visit after the allegations, the visit ended early due to J.W.'s behavior. At the next visit, the children exhibited extreme fear and the mother's and J.W.'s visits with the younger two children were halted pending consultation with the children's therapists.  Neither parent resumed visits with the younger children.

J.W. has a history of domestic violence and substance abuse.  He had stable housing with his sister's family for the past year and worked an assortment of part-time jobs.  He has an anger disorder, causing concerns during visits with service providers.  J.W. was in jail for a short period in the spring of 2019.  He

---

[3] In the spring of 2020, all four children were moved to alternate foster care placements.

completed a Caring Dads course and attended recommended mental-health treatment. J.W. failed to comply with some drug screens throughout the CINA proceedings and tested positive for methamphetamine in December 2019.

C.L. has a lengthy history of methamphetamine and other drug abuse. He has been in prison twice during Z.L.'s life, the latest an almost-three-year period including the early stages of this CINA case. C.L. was released from prison in January 2019, but he relapsed on methamphetamine in August and October. His parole was revoked and he returned to prison, then moved to a residential facility in January 2020. C.L. did not believe his incarceration and sporadic presence in Z.L.'s life harmed the child. By the end of the termination hearing, C.L. had employment and housing set up for after his release from the residential facility.

On June 10, 2020, the court terminated each parent's rights pursuant to Iowa Code section 232.116(1)(e) and (f) (2019).

The mother, J.W., and C.L. appeal.

**II. Standard of Review**

Our review of termination-of-parental-rights proceedings is de novo. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). "We give weight to the juvenile court's factual findings, especially when considering the credibility of witnesses, but we are not bound by them." *Id.* (citation omitted). The paramount concern in termination proceedings is the best interest of the child. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

**III. Analysis**

"[I]n termination of parental rights proceedings each parent's parental rights are separate adjudications, both factually and legally." *In re D.G.*, 704 N.W.2d

454, 459 (Iowa Ct. App. 2005). We consider the strengths and weaknesses of each parent individually. *Id.* at 460.

The mother argues the State failed to meet its burden to prove a statutory ground for termination and termination of her rights is not in the best interests of the children. J.W. claims the State failed to meet its burden under section 232.116(1), termination is not in the best interests of the children, and the court should have granted him an extension of time and placed L.W. and C.W. in a family guardianship. C.L. claims the State failed to meet its burden, termination of his parental rights is not in Z.L.'s best interests, and the State failed to make reasonable efforts to reunite him with the child so he should be granted an additional six months to reunite with the child.

**A. Grounds for termination.** "When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record." *A.B.*, 815 N.W.2d at 774. We find termination was proper for each parent under section 232.116(1)(f).

To terminate a parent's rights under Iowa Code section 232.116(1)(f), the court must find:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

No parent disputes the first three elements have been met as to each child. All four children were four years old or older at the time of the termination hearing, had been adjudicated CINA in September 2018, and had been removed from the parents' custody for more than twelve months without a trial period at home. *See* Iowa Code § 232.116(1)(f)(1)–(3). All three parents contest the final element, each claiming their child or children could be returned to their custody.

The mother testified at the termination hearing that the children should not be returned to her until she finished substance-abuse treatment and some mental-health treatment. However, she had recently stopped attending substance-abuse treatment. Domestic violence was a concern at the outset of the case and remained largely unaddressed. Nor had the mother begun any mental-health treatment. The mother did not have employment or any means by which to support the children. There is clear and convincing evidence the children could not be returned to her at present, supporting the termination of the mother's parental rights to all four children under section 232.116(1)(f).

J.W. tested positive for methamphetamine between the first and second day of the termination hearing. He had not engaged in any substance-abuse treatment.[4] He completed the Caring Dads course and some therapy sessions. J.W.'s undiagnosed and untreated methamphetamine use means the children could not be returned to his custody at the time of the termination hearing. Clear and convincing evidence supports the termination of J.W.'s parental rights under section 232.116(1)(f).

---

[4] J.W. did not disclose any drug use during his substance-abuse evaluation, and as a result no treatment was recommended.

C.L. was still residing in a department of corrections residential facility at the end of the termination hearing and could not have Z.L. stay with him. While he had housing set up outside the facility with his significant other, he was not available to take custody of Z.L. Clear and convincing evidence supports the termination of C.L.'s parental rights under section 232.116(1)(f).

### B. Best interests of the children.

> Even after we have determined that statutory grounds for termination exist, we must still determine whether termination is in the children's best interests. In evaluating this issue, we "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]."

*A.B.*, 815 N.W.2d at 776 (citations omitted). Parenting "must be constant, responsible, and reliable." *Id.* at 777 (citation omitted).

Three of the children did not feel comfortable having visits with the mother and had not seen her for several months. The mother lacks stability in her life as far as employment and housing. She has not followed through with any of the recommended treatment for her mental health and substance abuse. We find it is in the children's best interests to terminate the mother's parental rights.

J.W. claims his parental rights should not be terminated "due to the close and loving bond between the father and the minor children." He was using illegal drugs during the pendency of the termination petition. Therapy reports for his children linked behavioral problem with parental contact, and one of his children made abuse allegations against him. Termination of J.W.'s parental rights is in the children's best interests.

Z.L. reported not knowing C.L. and did not want to live with him. C.L. and the child had not lived together in the same home for at least six years, with most communication happening via phone calls during C.L.'s incarceration. C.L. has not shown he is able to maintain sobriety while in the community. C.L. did not show any understanding how his incarceration, intermittent presence in Z.L.'s life, and lack of stability were harmful to the child's need for consistency and support. Terminating C.L.'s rights is in the best interests of the child.

**C. Extension.** Both J.W. and C.L. request an additional six months to achieve reunification. J.W. argues the court should have either placed L.W. and C.W. in a guardianship or granted his request for an extension of time for reunification. C.L. requests an additional six months, stating DHS repeatedly failed to provide him with visitation and reasonable efforts to reunite him with Z.L. C.L. also proposed a guardianship for Z.L.

"[O]ur legislature has carefully constructed a time frame to provide a balance between the parent's efforts and the child[ren]'s long-term best interests." *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). We do not require children to wait for a stable and responsible parent. *Id.* Moreover, to grant a six-month extension, the court must "enumerate specific factors, conditions, or expected behavioral changes" providing a basis to determine removal will no longer be necessary at the end of that time period. Iowa Code § 232.104(2)(b).

The children had all been removed from the parents for eighteen months by the end of the termination hearing. Neither father presented the court with reason to expect removal would no longer be necessary at the end of an additional six months. A six-month extension was unwarranted.

C.L.'s claim the State failed to provide reasonable efforts is also denied. Although the State must show reasonable efforts to reunify the family, a parent has a duty to request services early in the process with adequate time to achieve changes. *See In re L.M.*, 904 N.W.2d 835, 839–40 (Iowa 2017). "[P]arents have a responsibility to object when they claim the nature or extent of services is inadequate," and failure to do so waives the issue at the time of termination. *Id.* The only service requested was additional visits with the child. The court ordered therapeutic visits for father and child to "transition level of supervision with therapeutic input." After an unsuccessful therapeutic visit, the visits never transitioned. Moreover, C.L. testified he did not consider in-person visits while he was in prison to be good for the child. We find DHS provided all services available given C.L.'s constantly changing incarceration status, the child's mental health, and the father's lack of progress throughout these proceedings.

Neither father presented testimony or written evidence that the proposed guardians agreed to act as guardian or that such an arrangement would be in the children's best interests. These children have been moved multiple times in their young lives and deserve stable, permanent homes. Neither a guardianship nor an extension of time would be in the children's best interests.

We conclude termination of the appealing parents' rights is in the children's best interests and affirm on all three appeals.

**AFFIRMED ON ALL THREE APPEALS.**