# IN THE COURT OF APPEALS OF IOWA

No. 22-1178
Filed October 19, 2022

**IN THE INTEREST OF K.W.,**
**Minor Child,**

**D.D., Father,**
　　Appellant.

_____

　　Appeal from the Iowa District Court for Polk County, Kimberly Ayotte, District Associate Judge.

　　An incarcerated father appeals the termination of his parental rights to his three-year-old daughter. **AFFIRMED**.

　　Cathleen J. Siebrecht of Siebrecht Law Firm, Des Moines, for appellant father.

　　Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

　　Agnes G. Warutere of Warutere Law Firm, PLLC, Ankeny, attorney and guardian ad litem for minor child.

　　Considered by Bower, C.J., and Tabor and Greer, JJ.

**TABOR, Judge.**

A father, Diamond, never met his daughter K.W. He was incarcerated when she was born in November 2019. He did not learn of his paternity until September 2021. By then, K.W. had been removed from her mother's care for six months. He did not have counsel until January 2022. In February 2022, a social worker reached out once, unsuccessfully, to visit with Diamond and his attorney. The State petitioned to terminate his rights in April, and the court held a hearing in May. A prison official told counsel that Diamond could not participate in the hearing "because of safety and mental health concerns." Diamond's counsel also made a professional statement that Diamond had refused her calls and letters. The court kept the record open so Diamond could file a position statement. He did so on June 24, asking for more time to forge a bond with K.W. Five days later the juvenile court terminated his parental rights. The ruling did not address the father's request for more time.

Diamond now asserts the court erred in failing to extend the deadline for reunification. He also contends the State failed to offer clear and convincing proof that his parental rights should be terminated. And he complains he was "never given an opportunity to establish a relationship" with K.W.

We recognize that the State made little effort to provide reunification services to Diamond once he was identified as K.W.'s father.[1] By the same token,

---

[1] The lack of services offered the father is troubling. The Iowa Department of Health and Human Services is to "make every reasonable effort" to return children to their homes "as quickly as possible" consistent with their best interests. Iowa Code § 232.102 (2022). This reasonable-efforts mandate "includes facilitating interactions between parents and children when the children are out of the home." *In re C.W.*, No. 16-0909, 2016 WL 4379336, at *4 (Iowa Ct. App. Aug. 17, 2016).

Diamond rebuffed the outreach that did occur. On this record, we find no basis for relief in the issues raised in his petition on appeal.[2] We thus affirm the termination order.

## I.     Facts and Prior Proceedings

In October 2020, K.W.'s younger half-brother tested positive for methamphetamine at birth. The family received services under a safety plan with the Iowa Department of Human Services. But in December 2020, K.W. tested positive for THC. Those two children, along with an older sibling, were removed from their mother's care in March 2021 after she tested positive for amphetamine, methamphetamine, and THC. They were adjudicated as children in need of assistance (CINA) in April 2021.

In early CINA filings, Dijon was identified as the father of both K.W. and her younger brother.[3] But a paternity test in August 2021 ruled him out as K.W.'s father. That fall, the court ordered Diamond to undergo paternity testing. He cooperated, and testing confirmed that he was K.W.'s father. Although testing was completed in late September 2021, Diamond was not served with the CINA filings

---

We also question whether one attempted virtual visit with an incarcerated parent met the standard for reasonable efforts. *See In re K.L.P.*, No. 15-1371, 2015 WL 6507840, at *4–5 (Iowa Ct. App. Oct. 28, 2015) (finding failure to facilitate visitation with incarcerated parent was unreasonable). True, a parent must alert the department to the inadequacy of services. But the department must first provide services. *See In re L.M.*, 904 N.W.2d 835, 841 (Iowa 2017) (Cady, C.J., dissenting). But Diamond does not raise a reasonable-efforts challenge.

[2] We review termination decisions de novo. *In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021). The juvenile court's factual findings do not bind us, though they deserve "respectful consideration." *Id.* The State must present clear and convincing evidence to support the grounds for termination. *Id.* That level of proof means we harbor no "serious or substantial doubts" about the correctness of the legal conclusions drawn from the evidence. *Id.* (citations omitted).

[3] The older child had a different father.

until November 8. And the State did not amend the petition to name him as a party until January 7, 2022. His appointed counsel, Cathleen Siebrecht, entered an appearance on January 11. At a hearing the next day, the court also appointed Siebrecht to act as Diamond's guardian ad litem because he was in prison.

In a report prepared in late February 2022, social worker Whitney Gamm said that she had "attempted to join a virtual visit with Diamond . . . and his attorney however [Diamond] refused the visit." Gamm gave no further information about the department's efforts to provide reunification services to Diamond. To close her report, Gamm recommended "that all fathers make their intentions known" and that the county attorney petition to terminate parental rights.

After a March permanency hearing, the juvenile court noted "the fathers are not engaged in services" and found that none of the parents had made progress toward reunification. As such, the court switched the permanency goal to termination of parental rights. The next month, the State petitioned to terminate parental rights for the mother and all three fathers. At the May termination hearing, attorney Siebrecht appeared on Diamond's behalf. She told the court that she arranged for her incarcerated client to appear remotely but he "was not interested in participating." She agreed the hearing could proceed without him and she could act in his best interests as his guardian ad litem.

To prove its case, the State called only one witness: K.W.'s mother. She briefly discussed Diamond in her testimony, saying that he never had a chance to build a relationship with the child because he was incarcerated the child's whole life. The State also offered three exhibits: the family centered services report, the paternity test results, and the department's termination report. At the end of the

hearing, the court agreed to have a transcript prepared so that Siebrecht could provide it to her client and allowed a week after that for her client to submit a response.

In that response, Diamond explained that he did not participate in the termination proceedings because he was "going through a depression state." He said he did not learn that K.W. was his child until he received the paternity test results. And he noted that he was not in the home when she was exposed to drugs by her mother. He criticized the lack of services: "I feel that I have not been given a fair chance yet to participate in her life." As for his availability, he informed the court that his first parole hearing was set for January 2023 and his discharge date was October 2025. He also asserted that he had "a good support system" in his family, especially his mother who wanted to be part of K.W.'s life. As his bottom line, he sought "more time to be a father" to his child. In the alternative, if his parental rights were terminated, he asked that his mother be considered as a placement for his daughter.

Less than a week later, the court issued its termination order, which did not address the requests in the father's position statement. Instead, the court terminated Diamond's parental rights to K.W. under Iowa Code section 232.116(1), paragraphs (b), (e), and (h).[4]

---

[4] The order also terminated the rights of the mother, who is not a party to this appeal.

## II.    Analysis

### A.  Extension of Permanency

In the petition on appeal, Diamond argues that the court erred in "failing to grant additional time for reunification."  But that brief mention is the extent of the argument on that point.[5]  Assuming that mention is enough to frame the issue on appeal, we cannot grant relief.  Under Iowa Code section 232.117(5), the court may order an extension of permanency for up to six months under section 232.104(2)(b) as an alternative to terminating parental rights.  *See In re N.J.*, No. 19-1999, 2020 WL 2988237, at *3 (Iowa Ct. App. June 3, 2020).  Such an extension is appropriate if the court can point to "specific factors, conditions, or expected behavioral changes" that justify believing the need for removal from parental care would no longer exist after that time.  Iowa Code § 232.104(2)(b).  Diamond offers no factors to fit this justification for delay.  In fact, he acknowledged in his position statement that he would not see the parole board until next January, more than six months after the termination order issued.  He has no existing relationship with K.W.  This record does not support his request to delay permanency for his daughter.

### B.  Grounds for Termination

Diamond next argues the State did not offer clear and convincing evidence to support any of the three statutory grounds for termination.  When the juvenile

---

[5] Granted, abbreviated briefing is allowed in these expedited appeals.  *See* Iowa Rs. App. P. 6.201(1)(d), 6.1401–Form 5.  But we have declined to consider an issue when the parent's position is not sufficiently formulated to facilitate our review.  *See, e.g.*, *In re M.G.*, No. 11-0340, 2011 WL 2090045, at *4 (Iowa Ct. App. May 25, 2011).

court terminates parental rights on more than one ground, we may affirm the ruling on any ground supported by the record. *In re W.M.*, 957 N.W.2d 305, 313 (Iowa 2021). We focus today on paragraph (h).

That provision allows termination if the court determines that the State proved these elements:

> 1. The child is three years of age or younger.
> 2. The child has been adjudicated a [CINA] pursuant to section 232.96.
> 3. The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> 4. There is clear and convincing evidence that the child cannot be returned to custody of the child's parents as provided in section 232.102 at the present time.

Iowa Code § 232.116(1)(h).

Diamond challenges only the proof of removal in element three. He contends physical removal from the mother was insufficient to trigger the timelines for him. Our case law rejects that argument. *See In re J.E.,* 907 N.W.2d 544, 547 (Iowa Ct. App. 2017). Termination was proper under paragraph (h).

**AFFIRMED.**