# IN THE COURT OF APPEALS OF IOWA

No. 23-1287
Filed November 21, 2023

**IN THE INTEREST OF H.L., A.L., Z.L., and B.L.,**
**Minor Children,**

**A.L., Mother,**
         **Appellant.**
_____

Appeal from the Iowa District Court for Cerro Gordo County, Adam Sauer,

District Associate Judge.


A mother appeals the termination of her parental rights to four children.

**AFFIRMED.**


Jane M. Wright, Forest City, for appellant mother.

Brenna Bird, Attorney General, and Michelle R. Becker and Ed Bull,

Assistant Attorneys General for appellee State.

Carrie Jean Rodriguez, Garner, attorney and guardian ad litem for minor

children.


Considered by Tabor, P.J., and Badding and Chicchelly, JJ.

**CHICCHELLY, Judge.**

A mother appeals the termination of her parental rights to her four children: H.L., born in 2015; A.L., born in 2018; Z.L., born in 2019; and B.L., born in 2020. She argues the State did not meet its burden in establishing the grounds for termination. Upon our de novo review, we find there is clear and convincing evidence to support termination of the mother's parental rights, and we therefore affirm.

## I.     *Background Facts and Proceedings.*

On December 8, 2020, the father brutally assaulted the mother in the presence of H.L., Z.L., and A.L. The mother was pregnant, and this violence started her labor. The next day, she gave birth to twins. That same day, due to safety concerns of allowing the father to remain in the family home, the Iowa Department of Health and Human Services sought temporary removal of the children and placed them solely in the temporary custody of the mother. This removal order was left in place after a subsequent hearing, and on January 7, 2021, the court adjudicated the children to be Children in Need of Assistance. It again continued their custody with the mother and ordered the father not to have contact with the mother or children other than during the Department's supervised scheduled interactions.

In late February 2021, one of the twins passed away from serious malnutrition. The other twin, B.L., was in a similar condition though alive, and was treated in the Intensive Care Unit for severe malnutrition. The remaining children were also hospitalized in various states of malnutrition. Both Z.L. and H.L. were considered very underweight. On March 1, all four children were removed from

the mother's custody and placed into the custody of the Department. They were discharged from the hospital shortly thereafter.

While the mother meaningfully participated in services initially, she often failed to comply with the Department's directives. The Department questioned her honesty with providers, and she was still in contact with the incarcerated father against the court's orders. Before the August 2021 review hearing, she had a positive drug test and was not able to graduate to unsupervised visits. She made brief progress by the February 2022 hearing, finding a job, participating in services, and passing drug screenings. By this point, she had reconciled with the father, and the two were living together. The juvenile court ordered that their joint visitations transition to semi-supervised.

But the situation changed again in April 2022. The mother and father were involved in another domestic violence situation, which left the father incarcerated again. The mother continued to participate in services at that time, and as a result, the juvenile court granted her a six-month extension at the October review hearing.

On February 9, 2023, the mother was charged with child endangerment resulting in death and child endangerment resulting in serious injury related to the twin's death and was taken into custody pending her criminal trial. On February 16, her counsel filed a notice of invocation of constitutional rights. In it, the mother declined any further contact with the Department. Following this filing, the Department had difficulty providing services and maintaining communication with the mother.

The State petitioned for termination of parental rights on March 16, 2023, when the mother's six-month extension lapsed. By June, the mother posted bond

and was released. She was not regularly attending services at this point, but she had consistent supervised visitation with the children. Throughout this time, the Department continued to question the mother's honesty. For example, she told the Department she purchased the house she was living in, though this was later determined to be untrue. She also maintained her relationship with the house's true owner was nothing more than friendship, but the Department suspected they were romantically involved. The Department also had substantial concerns about that individual because, in late June, he was arrested for what the mother testified was setting fire to the home in an attempted suicide. The Department expressed its apprehension about the mother's association with him, and the juvenile court found their romance an impediment to the mother's relationship with her children. Despite these concerns, the Department and the juvenile court described the children as thriving in their placements. The two oldest were placed in one home while the two youngest were in another. All four children were meeting developmental milestones and on target for weight. They were participating in activities and receiving services in their placements.

Trial was eventually held July 10 and 11. During trial, the Department's case manager visited the mother's home to determine whether it was safe and appropriate for the children. The case manager testified that the home was neither safe nor appropriate as it did not have floors in some places, and there were items piled up around the home. The mother would not allow the case manager to take photos of the home's poor condition. The juvenile court terminated the mother's

parental rights on August 1, finding the children could not be safely returned to her.[1]  The mother timely appealed.

## II.     Review.

Our review of termination proceedings is de novo.  *See In re B.H.A.*, 938 N.W.2d 227, 232 (Iowa 2020).  We will affirm the termination of a parent's parental rights if there is clear and convincing evidence of statutory grounds for termination. *In re T.S.*, 868 N.W.2d 425, 431 (Iowa Ct. App. 2015).  "Evidence is clear and convincing when there is no serious or substantial doubt as to the correctness of the conclusions of law drawn from the evidence."  *Id.*  While not binding, we give weight to the juvenile court's fact findings, especially those regarding witness credibility.  *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000).

## III.     Discussion.

The mother challenges the grounds for termination.  The juvenile court terminated her parental rights to H.L. and A.L. under Iowa Code section 232.116(1)(f) (2023), and to Z.L. and B.L. under 232.116(1)(h).  These sections are substantially the same with the exception of the children's ages and time of removal.  *Compare* Iowa Code § 232.116(1)(f) (allowing termination for children four years of age or older with clear and convincing evidence "the child[ren] cannot be returned to the custody of the" parents), *with* Iowa Code § 232.116(1)(h) (allowing termination for children three years or younger with "clear and convincing evidence that the child[ren] cannot be returned to the custody of the" parents).  The mother challenges only the fourth element: whether

---

[1] The fathers' parental rights were terminated October 2022 and not at issue in this appeal.

the children could be returned to her custody at the time of termination.  *See* Iowa Code § 232.116(1)(f)(4), (h)(4); *see also In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting "at the present time" to mean the time of the termination hearing).

The mother claims her stable housing, cooperation with services, and consistent visitation are evidence that the children could be returned to her custody.  But this does not accord with our findings from the record.  The mother was often more invested in romantic relationships than in her own parenting.  She was inconsistent with participation in services and in her compliance with the Department's guidelines, even blatantly ignoring them at times.  She frequently had difficulty providing honest and accurate information to the Department.  Finally, while the mother had regular visits with the children, she never was able to graduate to unsupervised visitation.  She has not demonstrated the necessary parenting skills and priorities that would allow for the children to return to her custody at this time.  Therefore, we agree there is clear and convincing evidence to support the grounds for termination of the mother's parental rights.

While the mother claims the State failed to comply with its requirements for termination, we disagree.  In what basically amounts to a reasonable-efforts claim, she specifically asserts the State failed to file a case permanency plan.[2]  *See In re L.M.*, 904 N.W.2d 835, 839 (Iowa 2017) ("The State must show reasonable efforts

---

[2] The Department's social worker testified she prepared the plan, and the State's attorney stated that he uploaded it.  But despite numerous other reports appearing in our record, a case permanency plan does not.  The mother's attorney did file a motion for lack of reasonable efforts in June 2023 but did not mention the lack of a case permanency plan.

as a part of its ultimate proof the child cannot be safely returned to the care of a parent." (citation omitted)). But the mother asserts this for the first time on appeal, and therefore her claim must fail. *See id.* (requiring a parent to make an affirmative objection to the services offered when challenging the State's reasonable efforts); *see also Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal."). Even if we were to find this issue preserved, her claim would still fail. The mother provides no argument for what alleged case expectations she did not understand nor why the alleged failure to provide a case plan would entitle her to reversal of the termination, and she further neglects to cite any authority supporting this notion. *See* Iowa R. App. P. 6.903(2)(g)(3) (allowing this court to waive arguments without proper citation and inadequately argued on appeal).

## IV.    *Disposition.*

Because there is clear and convincing evidence supporting the grounds for termination of the mother's parental rights, we affirm.

**AFFIRMED.**