## IN THE COURT OF APPEALS OF IOWA

No. 24-1671
Filed January 23, 2025

**IN THE INTEREST OF L.W.,**
**Minor Child,**

**B.D., Mother,**
　　　Appellant.
_____

　　　Appeal from the Iowa District Court for Pottawattamie County, Scott Strait, Judge.

　　　A mother appeals the termination of her parental rights to her child. **AFFIRMED.**

　　　Kyle E. Focht of Focht Law Office, Council Bluffs, for appellant mother.

　　　Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, for appellee State.

　　　Mandy L. Whiddon, Omaha, Nebraska, attorney and guardian ad litem for minor child.

　　　Considered by Schumacher, P.J., and Chicchelly and Sandy, JJ.

**CHICCHELLY, Judge.**

A mother appeals the termination of her parental rights to her child, L.W.[1] She contends the State failed to prove the statutory grounds for termination, the department failed to make reasonable efforts toward reunification, and a permissive exception should be granted due to either relative custody or the parent-child bond. Upon our de novo review, we affirm termination of the mother's parental rights.

## I.      *Background Facts and Proceedings.*

The Iowa Department of Health and Human Services was already involved with the family when L.W. was born in late 2023. While the department initially started its investigation based on allegations of domestic violence, it was also concerned about the parents' methamphetamine use. The mother's older children tested positive for methamphetamine and marijuana, and "a meth pipe was located" in the home. The mother agreed to the department's proposed safety plan, in which the father could not have contact with the children and the mother would remain sober while caring for the children. But when the department arrived at the home, the father was hiding in the bedroom and there was a strong smell of marijuana. The children were removed and adjudicated as Children In Need of Assistance.[2]

---

[1] The father's rights to L.W. were also terminated in the same proceedings. But he does not appeal.

[2] L.W. and her older sister, M.W., were removed together. But the juvenile court terminated the mother's parental rights to M.W. in June 2024, and we affirmed the termination in November 2024. *See In re M.W.*, No. 24-1060, 2024 WL 4762708, at *4 (Iowa Ct. App. Nov. 13, 2024). We therefore do not consider M.W. further on appeal, except to note that this previous termination served as the basis to one of the statutory grounds for termination. *See* Iowa Code § 232.116(1)(g) (2024)

After removal, L.W. tested positive for methamphetamine, and her older siblings tested positive for methamphetamine and THC.[3]  The State charged the mother with three counts of felony child endangerment—methamphetamine exposure and one count aggravated-misdemeanor child endangerment.  A no contact order was entered, which prevented the mother from having any contact with L.W. or the other children.  Pursuant to a plea agreement, the mother pled guilty to the aggravated misdemeanor, and the other charges were dismissed.  The mother also agreed to extend the no contact order for five years until February 2029.  The district court accepted her plea and sentenced her to an indeterminate term of incarceration not to exceed two years, but it suspended the sentence and imposed probation.  In March 2024, the mother was arrested again.  This time, the State charged her with four counts of forgery, second-degree theft, and conspiracy to commit a nonforcible felony, which were still pending at the time of termination.

One of the department's central concerns was the mother's "unhealthy relationship with [the father]," and the department continued to emphasize the concern that the mother continued to choose her relationship with the father over her children.  While the mother claimed she did not have any contact with the father, she shared 206 phone calls with him during a two-week period while he was incarcerated.  These contacts occurred in July 2024, just two weeks before the termination hearing.

_____

(permitting termination when the parental rights to "another child who is a member of the same family" have also been terminated).

[3] L.W. was not tested for THC because "[t]here wasn't enough hair to test for [it]."

Because of the active no contact order, the department was unable to facilitate visits between the mother and L.W. But the department still offered other services, including mental-health and substance-use programming, to which the mother failed to engage. While she "started and stopped treatment multiple times since [L.W.] was removed from her care," the mother failed to complete any treatment nor meaningfully maintain her sobriety. The mother participated in thirty-five drug screenings throughout the proceedings, but only two were negative.[4]

At the termination hearing, the mother testified that she had made great progress, such as completing substance-use and mental-health evaluations, beginning treatment, and maintaining sobriety for four months. But the juvenile court did not find her testimony credible based on her "repeated attempts to deceive the Department and the Courts." It terminated the mother's parental rights to L.W., and she appeals.

## II. Review.

Our review is de novo. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). While the juvenile court's findings of fact are not binding on us, "we do give them weight, especially in assessing the credibility of witnesses." *Id.* (citation omitted).

---

[4] Eighteen of these drug screenings "were positive for an illegal substance" and fourteen were considered "no shows." But "[w]e presume these missed tests would have been positive for illegal substances." *In re R.A.*, No. 21-0746, 2021 WL 4891011, at *1 (Iowa Ct. App. Oct. 20, 2021). This accounts for thirty-four out of thirty-five tests, with the remaining test being "diluted."

### III. Discussion.

To review termination-of-parental-rights proceedings, we use a three-step analysis, including whether: (1) the statutory grounds for termination have been established, (2) termination is in the best interests of the children, and (3) we should exercise any permissive exceptions to termination. *Id.* at 472–73. The mother only challenges the statutory grounds and permissive exceptions to termination, so we limit our analysis to only those steps. *See In re J.P.*, No. 19-1633, 2020 WL 110425, at *1 (Iowa Ct. App. Jan. 9, 2020) ("[I]f a parent does not challenge a step in our analysis, we need not address it.").

*A. Statutory Grounds for Termination.*

The juvenile court terminated the mother's parental rights under Iowa Code section 232.116(1)(e), (g), (h), and (*l*). And while she addresses each ground on appeal, we confine our analysis to section 232.116(1)(h). *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012) ("When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record.").

To terminate parental rights under Iowa Code section 232.116(1)(h), the court must find:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

The mother does not dispute that the State proved the first three elements for termination under section 232.116(1)(h). Instead, she argues the State failed to prove by clear and convincing evidence that "the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time." *Id.* § 232.116(1)(h)(4). "At the present time" means at the time of the termination hearing. *See In re A.B.*, 956 N.W.2d 162, 168 (Iowa 2021) (interpreting the phrase as used in Iowa Code section 232.116(1)).

The mother's arguments against the finding that the child could not be returned to her custody are, in essence, those for more time. *See* Iowa Code § 232.104(2)(b) (permitting the juvenile court to grant additional time to work toward reunification if "the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period"). But we agree with the juvenile court that L.W. "cannot be safely placed with [her mother] at this time nor in the foreseeable future." First, and most importantly, the mother has an active no contact order, which prevents any contact with L.W. Given the no contact order, the child could not be returned to the mother's custody. *See M.W.*, 2024 WL 4762708, at *2 (finding "the no-contact order between [the mother] and the child prevents the child from being returned to her custody"). But the mother has also not addressed the circumstances that led to the initial removal.

For example, the mother has neither demonstrated a significant period of sobriety nor an ability to care for her children. "A parent's methamphetamine use, in itself, creates a dangerous environment for children." *J.P.*, 2020 WL 110425, at *2. The record supports the mother's continued struggles to remain sober and provide care for L.W. while under the influence. And while she testified that she

has been sober from methamphetamine for four months, this is not enough. *See In re A.V.*, No. 18-1297, 2018 WL 6707758, at *2 (Iowa Ct. App. Dec. 19, 2018) (finding the mother's "recent sobriety of a few months" "brief in comparison to her long history of substance abuse"). Further, the juvenile court did not find her testimony credible, and we give deference to such determinations. *See A.S.*, 906 N.W.2d at 472.

As another example, the mother has also failed to address the department's concerns about her romantic relationships. The father has a lengthy history with both the criminal justice system and the department, including a founded case for domestic violence "which ultimately led to the death of a woman." The department later became involved with this family after receiving allegations that he strangled and punched the mother. Despite this, the mother continued to contact the father, not once or twice, but over *two hundred times* just before the termination hearing. "A child cannot be returned to the care of the mother where her abusive paramour presents a risk of harm to the children." *In re I.M.*, No. 16-0685, 2016 WL 4036256, at *1 (Iowa Ct. App. July 27, 2016); *accord In re T.S.-G.*, No. 16-1821/16-1899, 2017 WL 513956, at *3 (Iowa Ct. App. Feb. 8, 2017) ("Domestic abuse is, in every respect, dramatically opposed to a child's best interests." (citation omitted)). The mother has also repeatedly lied to the department about their relationship in attempts to conceal it. *See In re J.K.*, No. 24-0561, 2024 WL 3292695, at *3 (Iowa Ct. App. July 3, 2024) (considering the mother's dishonesty about her relationship when determining whether to terminate). More egregious, she has refused to sever contact with him despite its substantial impact on her ability to regain custody of L.W. On these facts, termination is warranted. *See id.* (finding the mother's

"domestically violent relationship with the father was enough to prevent returning the child to her custody"). We therefore find that L.W. could not be returned to the mother's custody, and an additional six months will not change that outcome.

*B. Reasonable Efforts.*

The mother also challenges the department's reasonable efforts in reunifying the family. *See In re L.M.*, 904 N.W.2d 835, 839 (Iowa 2017) (requiring the State to "show reasonable efforts as part of its ultimate proof the child cannot be safely returned to the care of a parent" (citation omitted)). She specifically contends that the department failed to violate the no contact order and provide visitation with L.W. But this argument is waived because the mother failed to make an affirmative objection to the services argued. *See id.* at 839–40; *In re A.W.*, No. 23-1125, 2023 WL 6290680, at *3 (Iowa Ct. App. Sept. 27, 2023) (explaining a reasonable-efforts challenge and the process required to preserve such a challenge for appeal). And even if we did consider her argument, her reasonable-efforts challenge would fail. "The department was obligated to follow the order" restricting contact between the mother and child. *In re F.K.*, No. 14-1692, 2015 WL 409273, at *2 (Iowa Ct. App. Jan. 28, 2015) (finding the department still met its reasonable-efforts requirement despite "declining to facilitate visits"). We do not find that the department was required to violate a court order in order to comply with its reasonable-efforts requirement. *See id.* Nor was it required to modify the no contact order on behalf of the mother. *See In re C.G.*, No. 23-1234, 2024 WL 260926, at *2 (Iowa Ct. App. Jan. 24, 2024) (rejecting a similar argument on its merits). Accordingly, we affirm the court's finding of reasonable efforts.

*C. Permissive Exceptions to Termination.*

Finally, the mother loosely asserts that we should apply a permissive exception to termination, either because the child has been placed with a relative or due to the parent-child bond. *See* Iowa Code § 232.116(3)(a) (providing a discretionary exception to termination when "[a] relative has legal custody of the child"), (c) (providing a discretionary exception to termination based on "the closeness of the parent-child relationship"). On this record, we cannot find that either exception is warranted. First, a relative exception does not apply because a relative does not have legal custody of the children; instead, the department does. *See In re A.B.*, 956 N.W.2d 162, 170–71 (Iowa 2021) (differentiating between placement with a relative and a relative having legal custody). Second, we place the burden on the parent to establish "that, on balance, that bond makes termination more detrimental than not." *In re W.M.*, 957 N.W.2d 305, 315 (Iowa 2021). We find that the mother has not met such a burden. L.W. has been out of her mother's custody since she was just five weeks old. *See A.B.*, 956 N.W.2d at 170–71 (considering the tender age of the child and time spent out of the parents' care in determining whether to apply a parent-child bond exception). And during that time, the mother has not demonstrated an ability to care for L.W., which further outweighs any potential bond. *See id.* We therefore decline to apply either exception to termination.

*IV.* ***Disposition.***

Because the statutory grounds for termination have been satisfied and we decline to apply a permissive exception, we affirm termination of the mother's parental rights to L.W.

**AFFIRMED.**