# IN THE COURT OF APPEALS OF IOWA

No. 24-1880
Filed February 19, 2025

**IN THE INTEREST OF J.C.,**
**Minor Child,**

**B.C., Mother,**
     Appellant,

**J.H., Father,**
     Appellant.

_____

Appeal from the Iowa District Court for Pottawattamie County, Scott Strait, Judge.

A mother and father separately appeal the termination of their parental rights to their child. **AFFIRMED ON BOTH APPEALS.**

J. Joseph Narmi, Council Bluffs, for appellant mother.

McKinsea Alexander, Council Bluffs, for appellant father.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

Sara E. Benson of Meldrum & Benson Law P.C., Council Bluffs, attorney and guardian ad litem for minor child.

Considered by Tabor, C.J., and Schumacher and Chicchelly, JJ.

**CHICCHELLY, Judge.**

A mother and father separately appeal the termination of their parental rights to their child, J.C., born in 2021.[1] Upon our de novo review, we affirm termination of both the mother and father's respective parental rights.

## I.   *Background Facts and Proceedings.*

In November 2023, the Council Bluffs Police Department responded to the father's home "for a disturbance." Despite an active no contact order between them, according to the father, the mother had been living at his home for a week and refused to leave. The officers arrested the mother for the violation and removed J.C. The day after the removal, the mother tested positive for both amphetamine and methamphetamine. She tested positive for methamphetamine one other time before refusing to drug test again for the department. J.C. was adjudicated a Child In Need of Assistance.

As the district court summarized, the parents have a significant domestic violence history:

> On August 1, 2021 when [J.C.] was not yet a month old, [the father] was arrested for domestic abuse of [the mother] and child endangerment of [J.C.]. Police were called for domestic violence between them on March 9, 2023 and July 11, 2023. On October 17, 2023 police were called for violations of a no-contact order and [the mother] backing her camper into [the father's] garage door. On February 23, 2024, the Council Bluffs Police responded to the home of [the father] for a stabbing. It was alleged that [the mother] stabbed [the father] multiple times with a steak knife. Then in May of 2024, [the father] was arrested in Nebraska for false imprisonment, strangulation and terroristic threats against the mother [*sic*].

---

[1] The parental rights of the mother's husband and another putative father were also terminated during these proceedings. Because neither appeals, we do not address them further.

But despite this, both parents continued to expose J.C. to domestic violence, which ultimately resulted in her removal.

In addition to the concerns about their relationships, the department also expressed concerns about the mother's substance use, mental health, and anger management. Early on in the proceedings, the mother attended a family-centered services meeting while "intentionally high." She refused nearly all services from the department, alleging that department staff were using drugs and "kidnapped" J.C. "because of the NEW WORLD ORDER." She also told the department that she "just caught [sixteen] people coming out of the wall" and threatened to leave the state with J.C. The mother also threatened to commit acts of violence against the department, providers, and the foster mother, eventually resulting in a no contact order between the mother and her social work case manager. Because of the threats, visits were conducted via Zoom, although the mother never consistently attended. While the mother did complete a mental-health evaluation, she never followed through with the recommendations, which were to complete "a psychological evaluation with a clinical psychologist" and medication management. The department also asked the mother to complete a substance-use evaluation, and while she complied, she denied any substance use despite testing positive for both fentanyl and THC that same day.[2] The evaluation recommended inpatient treatment, but the mother never participated.

---

[2] The mother claimed that she had a "false positive" for fentanyl because she was prescribed trazadone. But when the department requested she provide a physician letter or sign a release of information to confirm this, the mother refused.

The State petitioned for termination of parental rights. At the September 2024 hearing, the mother did not appear.[3] In her absence, the department testified that the mother had not had a visit with J.C. since June and had no verified employment or housing. Because of the active no contact order, the department was communicating with the mother through attorneys and the foster placement. In the meantime, the father had been incarcerated since May and never engaged in any services. The juvenile court terminated both parents' parental rights to J.C. Both appeal.

## II.    Review.

Our review is de novo. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). While the juvenile court's findings of fact are not binding on us, "we do give them weight, especially in assessing the credibility of witnesses." *Id.* (citation omitted).

## III.    Discussion.

To review termination-of-parental-rights proceedings, we use a three-step analysis, including whether: (1) the statutory grounds for termination have been established, (2) termination is in the best interests of the children, and (3) we should exercise any permissive exceptions to termination. *Id.* at 472–73.

---

[3] In terms of error preservation, we do not penalize the mother for not appearing for the termination hearing, as she was represented by her attorney. *See In re J.R.*, No. 24-0942, 2025 WL 52738, at *2 (Iowa Ct. App. Jan. 9, 2025). But we do note her lack of appearance impacted her ability to present evidence, such as testimony, and make substantive arguments. *See id.*

*A. Statutory Grounds for Termination.*

The juvenile court terminated the parents' parental rights under Iowa Code section 232.116(1)(e) and (h). To terminate parental rights under Iowa Code section 232.116(1)(h), the court must find:

> 1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

The father does not dispute that the State proved these elements for termination, and we find his current incarceration and still-pending criminal charges prevent J.C. from returning to his custody. We therefore do not address the father's statutory-grounds argument further and affirm. *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012) ("When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record.").

In regard to the mother, she only challenges the fourth element: whether "the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time." *Id.* § 232.116(1)(h)(4). "At the present time" means at the time of the termination hearing. *See In re A.B.*, 956 N.W.2d 162, 168 (Iowa 2021) (interpreting the phrase as used in Iowa Code section 232.116(1)). On its own, the mother's failure to address her "domestically violent relationship with the father was enough to prevent returning the child to her custody." *In re*

*J.K.*, No. 24-0561, 2024 WL 3292695, at *3 (Iowa Ct. App. July 3, 2024). But the mother also failed to address any of the department's other concerns: she refused services, did not participate in any treatment, and did not consistently attend visits. When she did engage with the department, she was violent and abusive. During most of the proceedings, the mother was either incarcerated or homeless. While she now claims that she has stable housing with a room suitable for the child, the department has not been able to confirm this. Without making any progress towards reunification, we cannot find that J.C. could be safely returned to her mother's custody. Accordingly, we affirm termination of her parental rights.

*B. Best Interests of the Child.*

We next consider the best interests of the child. To determine best interests, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). Upon our own review, we find that termination is in J.C.'s best interests. "It is not in the best interest of the child to return to a parent who refuses to address the [Department's] primary concerns." *In re A.G.*, No. 18-1161, 2018 WL 6131920, at *3 (Iowa Ct. App. Nov. 21, 2018) (cleaned up). We are also not convinced that either parent is capable of protecting J.C. from domestic violence, which "is, in every respect, dramatically opposed to a child's best interests." *In re T.S.-G.*, No. 16-1821/16-1899, 2017 WL 513956, at *3 (Iowa Ct. App. Feb. 8, 2017) (citation omitted). For these reasons, and those described previously, we therefore find the termination of each parent's parental rights to be consistent with J.C.'s best interests.

*C. Permissive Exceptions to Termination.*

Next, both the mother and father ask us to apply a permissive exception to termination due to their respective parent-child bonds. *See* Iowa Code § 232.116(3)(c) (providing a discretionary exception to termination based on "the closeness of the parent-child relationship"). "The court has discretion, based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship." *In re R.M.-V.*, 13 N.W.3d 620, 627 (Iowa Ct. App. 2024) (citation omitted). We do not find that either parent is able to establish such a bond. *Id.* (placing the burden on the parent). By the time of the termination hearing, J.C. had not even had a visit with her mother in three months and had been out of her mother's care for ten. J.C.'s guardian ad litem stated that "it is very difficult to say that Mom and [J.C.] are bonded" based on J.C.'s age, their lack of in-person interactions, and J.C.'s behaviors. In her mother's absence, J.C. has become "very bonded to" her foster parents and "is doing very well in [their] home." *See id.* (considering the child's stability in their current placement as part of permissive-exception analysis). As to the father, by his own admission, he only interacted with J.C. during the "ons" of his on-again off-again relationship with the mother. We find that neither parent is able to establish evidence of a bond so strong that it outweighs their inability to care for J.C. *See id.* We therefore decline to apply any exception to termination.

*D. Reasonable Efforts.*

Finally, both parents contend that the department failed to prove reasonable efforts. *See In re L.M.*, 904 N.W.2d 835, 839 (Iowa 2017) (requiring the State to "show reasonable efforts as part of its ultimate proof the child cannot be safely

returned to the care of a parent" (citation omitted)). Specifically, the father claims he was not provided proper notice or offered services, and the mother argues she should have received in-person visitation. But neither parent made an affirmative objection to the services offered, and we find their arguments are waived. *See In re A.W.*, No. 23-1125, 2023 WL 6290680, at *3 (Iowa Ct. App. Sept. 27, 2023) (explaining a reasonable-efforts challenge and the process required to preserve such a challenge for appeal).

## IV. Disposition.

Because we find the statutory grounds for termination have been established, termination is in the best interests of the child, and no permissive exceptions apply, we affirm termination of both parents' parental rights to J.C.

**AFFIRMED ON BOTH APPEALS.**