**IN THE COURT OF APPEALS OF IOWA**

No. 24-1065
Filed October 2, 2024

**IN THE INTEREST OF J.K.,**
**Minor Child,**

**M.K., Mother,**
     Appellant,

**Z.M., Father,**
     Appellant.

_____

Appeal from the Iowa District Court for Linn County, Carrie K. Bryner, Judge.

Parents separately appeal the termination of their parental rights.

**AFFIRMED ON BOTH APPEALS.**

Annette F. Martin, Cedar Rapids, for appellant mother.

David R. Fiester, Cedar Rapids, for appellant father.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

Robin Lynn O'Brien Licht, Cedar Rapids, guardian ad litem for minor child.

Considered by Greer, P.J., and Ahlers and Badding, JJ.

**BADDING, Judge.**

A mother and father separately appeal the termination of their parental rights to their child under Iowa Code section 232.116(1)(h) (2023). The mother struggled with substance use, mental health, and housing instability throughout the proceedings, while the father was mostly absent. As a result, the juvenile court found that "[n]either parent can be considered a safe placement at this time or any time in the reasonable future." We agree upon our de novo review of the record. *See In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022).

**I.     Background Facts and Proceedings**

When the child was born in June 2022, her umbilical cord drug screen was positive for "carboxy-THC." The mother admitted to a child protective worker with the Iowa Department of Health and Human Services that she smoked marijuana throughout her pregnancy to help with her mental health. The department's investigation resulted in a founded but safe assessment, with the mother agreeing to participate in voluntary services. Despite those services, the department became involved with the mother again after she left the child with a friend while she was out of town working in February 2023. Over the next few days, the child was passed around between five people, before ending up with someone the mother didn't know. An acquaintance of that person contacted law enforcement, and the child was removed from the mother's custody.

The child was adjudicated as a child in need of assistance in March. The father was served with notice of the proceedings at the end of that month, but he did not apply for counsel or otherwise appear in the case until July. He participated in just four visits with the child and not much else—he missed nearly all the court

hearings, avoided drug testing, and failed to obtain substance use or mental health evaluations.

The mother's participation in services was better. She obtained a mental health assessment, participated in weekly therapy, and found a job. But after moving out of her parents' home at the beginning of the case, the mother failed to find a residence of her own. She bounced between friends' homes, a motel, and sleeping in her parents' van. Despite obtaining a substance use evaluation and participating in some treatment, the mother continued to use marijuana and missed more than half of the drug tests that the department requested. Most of the tests that she did complete were positive for marijuana, with two positive results for methamphetamine in October. The mother blamed the positive methamphetamine results on her aunt, who used the drug while the mother was staying with her. In November, the mother was unsuccessfully discharged from substance-use treatment. And she had not yet obtained an evaluation for medications, rather than marijuana, to manage her mental health. Because of these concerns, the mother never progressed beyond supervised visits, although the service provider said that her visits "have gone really well."

The State petitioned to terminate the parents' rights in September. The father did not attend the hearing in December, though his attorney was present. The department's case manager testified that the child could not be returned to her mother's custody at that time, or "in the very near future," because of her substance use, mental health, and housing instability. The mother seemed to agree, testifying that she would need another "[t]hree to six months, tops," to address the department's concerns. The juvenile court concluded that both

parents were out of time, finding the child "has been removed from parental care since she was approximately eight months old. She is very young and needs a safe, stable home and family to love and care for her. Her parents are not in a position to provide her with the safety and stability she needs." The parents separately appeal this ruling.

## II.     Standard of Review

In conducting our de novo review of the juvenile court's ruling, we use a three-step analysis that asks whether (1) a statutory ground for termination is satisfied, (2) the child's best interests are served by termination, and (3) a statutory exception applies and should be exercised to preclude termination. *L.B.*, 970 N.W.2d at 313; *see also* Iowa Code § 232.116(1)–(3). If all three steps support termination, we then consider any other issues the parent raises, like whether more time should have been granted. *See* Iowa Code § 232.117(5); *id.* § 232.104(2)(b).

The mother's petition on appeal collapses these steps in one issue heading: "The trial court erred when it terminated the Mother's parental rights pursuant to Iowa Code Section 232.116(1)(h)." Under that heading, she argues without elaboration that "there is not clear and convincing evidence that the child could not be returned" to her care; "termination is not in the child's best interest"; she "has a clear bond with her daughter . . . and loves her very much"; and "there should have been more frequent visits and an additional period of rehabilitative services." Assuming without deciding that the mother's petition is sufficient to allow appellate review under our rules, we reject each of these arguments. *See In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000) ("A broad, all encompassing argument is insufficient

to identify error in cases of de novo review."). We also reject the father's more well-developed challenges to each of the three steps.[1]

## III. Analysis

### A. Ground for Termination

The parents only challenge the final element of Iowa Code section 232.116(1)(h)—that the child could not be returned to parental custody at the time of the termination hearing. *See* Iowa Code § 232.116(1)(h)(4) (requiring "clear and convincing evidence that the child cannot be returned to the custody of the child's parents . . . at the present time"); *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting the statutory language "at the present time" to mean "at the time of the termination hearing"). Starting with the mother, her concession that she would need another three to six months to address the department's concerns is clear and convincing evidence that the child could not be returned to her custody at the time of the termination hearing. *See In re Z.R.*, No. 21-1290, 2022 WL 1487119, at *2 (Iowa Ct. App. May 11, 2022). It's also supported by the record.

Since removal, the mother was without stable housing, continued to use marijuana, was unsuccessfully discharged from substance-use treatment, and remained without medications to treat her mental health diagnoses. *See In re E.C.*,

---

[1] The State argues that the father "failed to preserve all issues" because he did not appear for the termination hearing, and his attorney "did not question any of the witnesses, presented no independent evidence[,] and made no argument at the conclusion of the hearing." As another panel of this court recently recognized, "[t]here is some tension in our cases as to whether the normal rules of error preservation apply in this context, or whether the [father] could have waived [his] claims." *In re G.G.*, No. 22-1347, 2023 WL 152483, at *2 (Iowa Ct. App. Jan. 11, 2023) (comparing those cases). We elect to bypass the State's error-preservation concerns, leaving resolution of this tension in our cases for another day. *See State v. Taylor*, 596 N.W.2d 55, 56 (Iowa 1999).

No. 22-0516, 2022 WL 5080360, at \*2 (Iowa Ct. App. Oct. 5, 2022). While her visits with the child went well, she never progressed beyond fully supervised visits because of these issues. Without this necessary progression, we cannot say the child could have been returned to the mother's care. *See In re C.N.*, No. 19-1961, 2020 WL 567283, at \*1 (Iowa Ct. App. Feb. 5, 2020). And while the mother now challenges the frequency and progression of her visits, the record does not show that she raised that complaint prior to—or even at—the termination hearing. *See In re L.M.*, 904 N.W.2d 835, 840 (Iowa 2017) ("In general, if a parent fails to request other services at the proper time, the parent waives the issue and may not later challenge it at the termination proceeding." (citation omitted)). Clear and convincing evidence supports termination of the mother's rights under section 232.116(1)(h).

We reach the same conclusion for the father who, as a service provider testified, "hasn't done anything throughout this case to prove that he can be a . . . parent." The father argues "[n]o real safety concerns were made during his visits." But he attended just four visits, which were "rocky" at first, according to the provider. The father admitted that he used marijuana, but he did not obtain a substance-use evaluation or comply with drug testing for the department. He also failed to obtain a mental-health evaluation. Because the father did not participate in services aimed at reunification, we agree with the juvenile court that the child could not have been returned to his custody at the time of the hearing. *See, e.g.*, *In re J.R.-S.*, No. 24-0781, 2024 WL 3688595, at \*3 (Iowa Ct. App. Aug. 7, 2024).

### B.    Best Interests

Both parents combine the second and third steps of the analysis, with the mother simply arguing that "termination is not in the child's best interest.  [She] has a clear bond with her daughter . . . and loves her very much."  The father argues that "[b]y severing parental rights, it is highly unlikely [the child] will have any future chance of building" a bond with him.  We examine these issues separately, starting with the child's best interests.  *See, e.g.*, *In re A.A.*, No. 21-1972, 2022 WL 946503, at *3 (Iowa Ct. App. Mar. 30, 2022) ("We choose to separately address the often-conflated best-interests and statutory-exception arguments.").

On that question, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child."  Iowa Code § 232.116(2).  Neither parent addresses these factors.  *See In re E.S.*, No. 23-0590, 2023 WL 4104126, at *2 (Iowa Ct. App. June 21, 2023) ("Consideration of the parent-child bond is not a part of our best-interests analysis.").  In any event, the child cannot be placed in either parent's custody due to the safety concerns discussed above and their failure to complete the recommended services.  Meanwhile, the child has been in the same foster care placement since removal and is thriving.  *See* Iowa Code § 232.116(2)(b).  We agree with the juvenile court that termination is in the child's best interests.

### C.    Permissive Exception

As for the parents' bonds with the child, *see id.* § 232.116(3)(c), the father's argument that "[h]ad visits continued, it is more likely than not that this bond would continue to develop and thrive" acknowledges that he has no bond with the child.

That was confirmed by a service provider who testified, "I would say they don't really have a bond. I feel like [the father] is just doing the visits to do the visits. And from my observations, it seems like it's more of, like, this is my friend's baby type thing, because there is no type of bond there. . . ." The mother did have a bond with the child, but we agree with the department's case manager, who testified that "the strength of the bond does not outweigh the child's need for permanency." *See In re A.B.*, 956 N.W.2d 162, 169 (Iowa 2021) ("[T]he existence of a bond is not enough."). Because neither parent presented evidence that the child would suffer physically, mentally, or emotionally upon termination, we conclude this exception does not apply. *Id.* ("The law requires clear and convincing evidence that 'termination would be detrimental to the child at the time due to the closeness of the parent-child relationship.'" (quoting Iowa Code § 232.116(3)(c)).

### D.     Additional Time

Finally, the mother requests "an additional period of time for rehabilitative services." An extension of time is appropriate only if we can conclude "the need for removal . . . will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b). The mother does not identify any "specific factors, conditions, or expected behavioral changes" she intends to make during that extension of time. *Id.* And the child has waited long enough for permanency. *See A.B.*, 956 N.W.2d at 169 (noting the legislature "has established a limited time frame for parents to demonstrate their ability to be parents" and once that "limitation period lapses, termination proceedings must be viewed with a sense of urgency" (citation omitted)). So we reject this claim as well.

**AFFIRMED ON BOTH APPEALS.**