**IN THE COURT OF APPEALS OF IOWA**

No. 24-1141
Filed October 30, 2024

**IN THE INTEREST OF L.F.,**
**Minor Child,**

**A.F., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Polk County, Rachael E. Seymour,

Judge.


A mother appeals from a ruling terminating her parental rights to her child.

**AFFIRMED.**


Aaron H. Ginkens of Ginkens Law Firm, P.L.C., West Des Moines, for

appellant mother.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney

General, for appellee State.

Megil D. Patterson of Youth Law Center, Des Moines, attorney and guardian

ad litem for minor child.


Considered by Schumacher, P.J., and Buller and Langholz, JJ.

**BULLER, Judge.**

The mother of L.F. (born 2014) appeals from a ruling terminating her parental rights. After considering the State's contentions that the mother's failure to appear at the termination trial or adequately brief the issues on appeal waived her arguments, we consider the one argument that is (arguably) properly before us—concerning reasonable efforts—and affirm.

**Background Facts and Proceedings.** The mother and L.F. came to the attention of the Iowa Department of Health and Human Services (HHS) in February2023 following a report the mother was living with a known registered sex offender (who was using methamphetamine) and allowing him unsupervised access to eight-year-old L.F. Two weeks later, the mother left L.F. alone at night in a hotel room, and L.F. couldn't reach or find the mother. L.F. called one of the mother's acquaintances, who picked her up and left a note with the hotel's front desk around 1:30 a.m. The mother didn't reach out until after 6:00 a.m. The same month, HHS received and founded reports the mother had been using methamphetamine in the same room as L.F. Criminal charges for child endangerment, an aggravated misdemeanor in violation of Iowa Code section 726.6(8) (2023), were eventually filed based on allowing the sex offender access to the child, and the mother pled guilty. A hair test confirmed L.F. was exposed to methamphetamine and cocaine. These events led to HHS removing L.F. on February 23, 2023, and L.F. has not returned to the mother's custody since then.

HHS had a history of involvement with the mother before these events. In 2009, the mother gave birth to a child who tested positive for

tetrahydrocannabinol (THC). The mother entered but did not successfully complete various inpatient and outpatient treatment programs. The child was removed from her custody in late 2010 when she was jailed for probation violations. She was involved in a relationship plagued by domestic violence, picked up additional charges, and was eventually imprisoned—where she gave birth to another child. As a result of these and other actions, the mother's parental rights to these two children were terminated in 2011.

While pregnant with L.F. and during the child's early years, the mother was involved in another relationship riddled with domestic violence. There were child-custody disputes between the mother and the suspected father of L.F., which resulted in court involvement in Tennessee. And in 2023, the mother was arrested for providing false information, interference with official acts, and theft.

Other concerns documented by HHS and social-services workers include the mother and child's involvement in truancy court, the mother not obtaining treatment for ongoing significant medical problems, and the mother not addressing her mental health despite a history and diagnosis of bipolar disorder. As recently as the January before termination, HHS workers observed the mother appeared to be under the influence of controlled substances.

In this case, the mother did not contest removal of L.F. Nor did she appear at the child-in-need-of-assistance adjudication hearing. In late 2023, the court found HHS had failed to provide reasonable efforts in the form of visitation and ordered HHS and providers to do better. But when more visits were offered, the mother's attendance was inconsistent—even when visits were switched to phone or video at her request.

At the permanency hearing in early 2024, the juvenile court found the mother's substance-abuse and mental-health problems were unresolved and expressed concern over her "general disengagement and lack of communication with the child and professionals in the case." The court also found the failure to provide reasonable efforts (in the form of visits) in 2023 was not a barrier to the mother's participation in other services.

About two months later, the mother failed to appear for the termination trial. Her attorney contested termination on her behalf by offering an exhibit (a negative drug screen) into evidence, cross-examining the State's witness, and arguing against termination. As the juvenile court put it, "mother's counsel was unable to provide a reason for mother's lack of attendance."

HHS testimony confirmed the timeline of the case and the mother's lack of progress. An HHS worker explained that she had encouraged the mother to turn herself in and deal with her active warrants, but she had not done so. The mother similarly declined or failed to follow through on offers of individual therapy and joint therapy with the child. She claimed to be in a treatment program in January 2024 but provided no reports, waivers, or other evidence of continuing attendance aside from one possibly unobserved drug screen from January that happened to be negative. She did not participate in any HHS-requested drug screening after December 2023.

So far as the record discloses, the mother's last in-person contact with L.F. was in December 2023—some five months before termination—and she only confirmed and participated in one video chat with the child. There was never any type of trial home placement over the lifetime of the case. L.F.'s behavior

regressed after her last contact with the mother, in part due to the mother's inconsistent commitment to reunification. And L.F.'s therapist documented the serious maladaptive behaviors L.F. has engaged in as a direct cause of the trauma inflicted by the mother. As the juvenile court put it, L.F. "has been clear she does not want to return to mother's custody."

Consistent with recommendations from HHS, the county attorney, L.F.'s guardian ad litem, and L.F.'s therapist, the juvenile court terminated the mother's parental rights under Iowa Code section 232.116(1)(d), (e), (f), and (g). The court made extensive fact-findings, including a credibility assessment that the evidence had proven the mother failed to engage in services.

**Waiver.** As its first argument, the State urges that we should find the mother waived all of her appellate arguments. The State, drawing on our unpublished cases, urges that "[a] parent who fails to attend the termination hearing and fails to contest the elements waives appellate challenge to termination." *See In re Q.B.*, No. 23-2112, 2024 WL 707194, at *1 (Iowa Ct. App. Feb. 21, 2024) ("We have found failing to attend trial and contest the elements waives appellate challenges to termination." (collecting cases)). On this record, we choose to bypass the question of whether the mother's failure to appear at trial waived her claims. That said, we strongly encourage parents to attend termination trials as it is typically a tough road at trial and on appeal for any parent who does not testify regarding their progress toward reunification.

As its second contention, the State urges the mother waived her arguments on appeal by failing to adequately brief them, as the argument sections of her petition include no references to the record or analysis of the facts. On this basis,

we agree with the State for all but one of the mother's arguments: for issues concerning the statutory elements, best interests, and the permissive bond exception, we conclude the mother waived her appellate argument because her petition's argument on these issues consists solely of boilerplate conclusory statements and scattered general propositions of law. There are no citations to the record nor any arguments particular to this case. This does not comply with the rules of appellate procedure. *See* Iowa Rs. App. P. 6.201(1)(d), .1401–Form 5; *In re K.D.*, No. 21-0581, 2021 WL 3897419, at *2 (Iowa Ct. App. Sept. 1, 2021) (discussing these rules). For us to reach the merits of the un- or under-briefed issues, we would have to engage in the mother's research and advocacy to craft an argument on her behalf; and this we cannot do. *See Inghram v. Dairyland Mut. Ins.*, 215 N.W.2d 239, 240 (Iowa 1974). But we note, in an abundance of caution, that we have independently reviewed the record in light of the conclusory contentions made in the mother's petition and we discern no basis for relief on those issues—even if the briefing had been adequate—based on the facts set forth in this opinion. In particular, the mother's attorney did not argue the bond exception below and therefore did not preserve error on that claim.

The mother's claim concerning reasonable efforts contains a tiny bit of case-specific argument and includes a reference to factual findings made below. While we could also conclude this issue was waived, we elect to proceed to the merits and evaluate that claim.

**Reasonable efforts.** "The State must show reasonable efforts as a part of its ultimate proof the child cannot be safely returned to the care of a parent." *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000) (en banc). And parents must "object when

they claim the nature or extent of services is inadequate." *In re L.M.*, 904 N.W.2d 835, 839–40 (Iowa 2017). While it is true the juvenile court found reasonable efforts were not made regarding visitation for a portion of 2023, the court ordered HHS to correct the deficit and the mother's attorney did not argue or offer any evidence at the termination trial indicating HHS's shortcomings were not remedied or that they impacted the State's burden of proof for termination. Perhaps the mother would have a more viable argument on appeal if she had attended trial and testified as to the impact those visits had on her progression toward reunification. But we are limited to what actually happened, and we cannot speculate as to what the mother may have said if she testified. We are not convinced the claimed lack of reasonable efforts for visitation many months ago affected the mother's lack of progress on the stated goals of her attending mental-health and substance-use treatment, and she suggests no reasonable effort which would have remedied those problems. Assuming without deciding that error was preserved (though the mother's attorney did not raise this issue at trial), we reject this claim on the merits.

**AFFIRMED.**