# IN THE COURT OF APPEALS OF IOWA

No. 24-1537
Filed December 18, 2024

**IN THE INTEREST OF A.S. and G.S.,**
**Minor Children,**

**A.J., Mother,**
　　Appellant,

**C.S., Father,**
　　Appellant.

_____

　　Appeal from the Iowa District Court for Polk County, Lynn Poschner, Judge.


　　A mother and father separately appeal termination of their parental rights to two children. **AFFIRMED ON BOTH APPEALS.**


　　Lori M. Holm, Des Moines, for appellant mother.

　　Sarah E. Dewein of Cunningham & Kelso, P.L.L.C., Urbandale, for appellant father.

　　Brenna Bird, Attorney General, and Natalie Hedberg, Assistant Attorney General, for appellee State.

　　Jane White of Gribble, Boles, Stewart & Witosky Law, Des Moines, attorney and guardian ad litem for minor children.


　　Considered by Schumacher, P.J., and Badding and Chicchelly, JJ.

**CHICCHELLY, Judge.**

A mother and father separately appeal the termination of their parental rights to two children. Upon our review, we affirm on both appeals.

## I.  *Background Facts and Proceedings.*

The Iowa Department of Health and Human Services first became involved with this family after the mother attempted suicide in the presence of her two daughters. Two glass pipes were also located at the scene and attributed to methamphetamine use. A.S. and G.S., twins born in 2022, were removed and placed with their maternal aunt.

Throughout the life of the case, the mother made limited progress. Despite her mental health serving as the catalyst for the department's involvement, the mother did not take her prescribed medications or regularly engage in mental-health treatment. The department had similar concerns about her substance use after both children tested positive for amphetamine, methamphetamine, and marijuana immediately after removal. The mother herself tested positive for methamphetamine and continued to test positive intermittently; other times, she outright refused to test at all. The mother also had a lengthy criminal history including drug-related offenses, for which she was on parole. Despite all of this, the mother denied any methamphetamine use, claiming the test results were because "a meth lab exploded above us and the residue was all over the place." She did eventually start residential treatment and, while she initially showed progress, she was unsuccessfully discharged after violating program rules. Upon leaving treatment, the mother relapsed, missed multiple parole appointments, and did not comply with any treatment, which resulted in the

revocation of her parole. The mother then returned to prison, where she remained until the termination. At the August 2024 termination hearing, she testified that this was her fourth time in prison, and she will be released by April 2025 and discharged from parole in 2031. But the mother was hopeful that she would be permitted to go before the parole board as early as October or November 2024.

In the meantime, the father was incarcerated throughout the entirety of the proceedings. By the termination hearing, he had twelve years and seven months left to serve before his release. Similar to the mother, the department had concerns about his criminal history, substance use, and lack of engagement, particularly because his incarceration limited his participation in services.

After the termination hearing, the juvenile court terminated both the mother's and father's parental rights to A.S. and G.S. Both parents appeal.

## II.    Review.

We review termination-of-parental-rights proceedings de novo. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *Id.* (citation omitted).

## III.    Discussion.

When reviewing termination of parental rights, we use a three-step analysis, including whether: (1) the statutory grounds for termination have been established, (2) termination is in the best interests of the children, and (3) we should exercise any permissive exceptions to termination. *Id.* at 472–73. Because neither parent

adequately argued the first two steps, we only address permissive exceptions to termination.[1]

   A. *Permissive Exceptions to Termination.*

   Both parents ask us to decline to terminate based on the children's placement with a relative and a parent-child bond. We address each exception separately.

   First, the parents loosely assert that a relative exception applies.[2] *See* Iowa Code § 232.116(3)(a) (providing a discretionary exception to termination when "[a] relative has legal custody of the child"). But this exception does not apply here because a relative does not have legal custody of the children; the department does. *See In re A.B.*, 956 N.W.2d 162, 170 (Iowa 2021) (differentiating between placement with a relative and a relative having legal custody).

---

[1] Neither parent addressed the statutory grounds for termination at all. And while they both argued the best interests of the children do not support termination based on a parent-child bond, this argument is part of the permissive-exception analysis, so we address it there. *See In re E.S.*, No. 23-0590, 2023 WL 4104126, at *2 (Iowa Ct. App. June 21, 2023) ("Consideration of the parent-child bond is not part of our best-interests analysis."). The father also loosely contends that the department's efforts towards reunification were limited and ineffective, and he further criticizes its placement decisions. We interpret this to be a reasonable-efforts challenge. *See In re L.M.*, 904 N.W.2d 835, 839 (Iowa 2017) (requiring the State to "show reasonable efforts as part of its ultimate proof the child cannot be safely returned to the care of a parent" (citation omitted)). But we find this argument both unpreserved and waived because he failed to make an affirmative objection to the services offered before the termination hearing. *See id.* at 839–40; *see also In re A.W.*, No. 23-1125, 2023 WL 6290680, at *3 (Iowa Ct. App. Sept. 27, 2023) (explaining the reasonable-efforts process and the requirements to preserve such a challenge for appeal).

[2] While the parents vaguely state such a conclusion, this argument is also likely waived for lack of argument or supporting authority. *See* Iowa R. App. P. 6.903(2)(a)(8)(3) (waiving issues inadequately argued on appeal).

Second, the mother and father ask us to apply an exception based on their respective parent-child bonds. *See* Iowa Code § 232.116(3)(c) (providing a discretionary exception to termination based on "the closeness of the parent-child relationship"). "It is not enough to establish the existence of a bond; instead, the parent must prove the bond is so significant that severing it would be detrimental to the child." *A.W.*, 2023 WL 6290680, at *3. Neither parent has established such a bond. While we do not doubt the parents' love for their children, A.S. and G.S. have been out of the mother's custody for an entire year and have *never* been in the father's custody. *A.B.*, 956 N.W.2d at 170–71 (considering the young ages of the children and the time spent out of the parents' care in determining whether a parent-child bond exception applies). On this record, we cannot find that the twins would be "disadvantaged by termination." *See In re W.M.*, 957 N.W.2d 305, 316 (Iowa 2021) (citation omitted). In fact, the parents' inability to care for their children outweighs any potential bond. *See id.* We therefore decline to apply this exception.

*B. Extension of Time.*

Finally, the mother argues that the court should have granted her a six-month extension to work towards reunification.[3] *See* Iowa Code § 232.104(2)(b) (permitting the juvenile court to grant an extension to work towards

---

[3] The father similarly argues that the mother should have been granted "additional time to demonstrate [her] ability to remain sober" and reunify with the children. But this passing reference is not sufficient to overcome waiver; again, we require parties to develop an argument and include supporting authority. *See* Iowa R. App. P. 6.903(2)(a)(8)(3). And even if we were to conclude the father did not waive this issue, the father cannot make arguments on behalf of the mother. *In re D.G.*, 704 N.W.2d 454, 460 (Iowa Ct. App. 2005) (stating that one parent cannot assert facts or legal positions pertaining to the other parent).

reunification if "the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period"). To justify the additional time, the court must be able to "enumerate the specific factors, conditions, or expected behavioral changes" that will occur over six months. *Id.* The mother does not meet her burden because she does not provide a single example of the expected changes. *See In re W.T.*, 967 N.W.2d 315, 323 (Iowa 2021) (placing the burden on the parent to "show the impediments to placing [the children] with [her] will not exist in six months"). Instead, the mother blames her lack of engagement on her addiction and claims that she "is in the best position to raise [her] children" because "[s]ix months is a drop in the sea of a lifetime relationship" between parent and child. But this is in stark contrast to our controlling precedent, which requires us to view termination "with a sense of urgency" once the statutory grounds have been met. *A.B.*, 956 N.W.2d at 169. A.S. and G.S. deserve permanency, and we decline to deprive them of such permanency in the hopes the mother will finally address her substance-use concerns and meet the twins' needs. *See In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000) (considering a parent's "past performance" to indicate "the quality of the future care that parent is capable of providing"); *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) ("We do not gamble with the children's future by asking them to continuously wait for a stable biological parent." (cleaned up)). In the last year of proceedings, the mother has found herself even worse off than at the time of removal; she is now incarcerated, has not successfully completed any mental-health or substance-use treatment, and failed to maintain her sobriety. Even if she is paroled within the six-month timeframe as she testified, based upon her previous pattern, we are not confident that the mother won't

re-offend or violate parole and return to prison for the fifth time. *See In re K.M.*, No. 16-1564, 2017 WL 362007, at *2 (Iowa Ct. App. Jan. 25, 2017) (finding the parent's "continual pattern of re-offending" and parole revocations supports termination). We therefore decline to delay permanency.

### IV. Disposition.

Because we decline to apply a permissive exception or grant a six-month extension, we affirm termination of the parents' respective parental rights to their two children.

**AFFIRMED ON BOTH APPEALS.**