**IN THE COURT OF APPEALS OF IOWA**

No. 25-0396
Filed September 4, 2025

**IN THE INTEREST OF L.L., L.L., and S.L.,**
**Minor Children,**

**B.C., Father,**
    Appellant,

**A.L., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Woodbury County, Stephanie Forker Parry, Judge.

The mother appeals the termination of her parental rights to three children. The father of the youngest child appeals termination of his rights to that child. **AFFIRMED ON BOTH APPEALS.**

John S. Moeller of John S. Moeller, P.C., Sioux City, for appellant father.

Molly Vakulskas Joly of Vakulskas Law Firm, P.C., Sioux City, for appellant mother.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

Michelle M. Hynes of Juvenile Law Center, Sioux City, attorney and guardian ad litem for minor children.

Considered without oral argument by Tabor, C.J., and Greer and Buller, JJ. Schumacher, J., takes no part.

**BULLER, Judge.**

The mother of three children (born 2017, 2021, and 2023) appeals the termination of her parental rights. The father of S.L., the youngest child, separately appeals termination of his parental rights. The legal and alleged father of the other two children does not appeal. On our de novo review, we affirm both appeals.

## I.     Background Facts and Proceedings

The mother has a lengthy history with the Iowa Department of Health and Human Services (HHS) related to substance abuse, starting in 2012 with a report that she was using marijuana and methamphetamine while driving her car with her child present; her rights to that child have been terminated. The two oldest children at issue came to the attention of authorities in 2021 after concerns surfaced about both parents' substance abuse, domestic violence in the household, and the father's sexual abuse of the oldest child. The mother and the two older children were found in an abandoned farmhouse described as "filthy and not suitable to be utilized as a living environment" with no electricity, food, or running water. There was methamphetamine and paraphernalia in the house accessible to the children. The mother was arrested, and HHS took custody of the two children and placed them with their maternal grandmother. Both children were adjudicated in need of assistance (CINA), and a child abuse assessment was founded after both tested positive for methamphetamine.

The children returned to their mother's custody in March 2022 while she lived at a recovery center. Within the span of a year, the mother and the children lived at a recovery center, a domestic violence shelter, a rental property funded by the mother's $21,000 gambling payout, and with the grandmother. In April 2023,

authorities again removed the children after the mother was arrested for domestic assault of the maternal grandmother—biting, hitting, and spitting on the grandmother and pulling her hair in front of one of the children. The two older children have not been returned to their mother's custody since then. But an HHS case manager witnessed the children exhibiting similar types of aggressive behaviors during and after supervised visits with the mother.

S.L. was born in June 2023 to the mother and B.C. (who we refer to throughout this opinion as "S.L.'s father"). S.L. tested positive for methamphetamine, amphetamine, and tetrahydrocannabinol (THC) at birth and was temporarily removed. Despite these results, the mother denied using any drugs for the prior two years and claimed she was sober for five years before she relapsed and HHS "stole" the older two children. S.L. returned to the mother's custody, living with her for several months. The juvenile court adjudicated S.L. a CINA in August. Several months later, S.L. was removed from the mother's custody and placed with the maternal grandmother with her siblings. The mother had two supervised visits each week and the option for additional interactions supervised by the grandmother.

Over the three-and-a-half year life of these juvenile cases, the mother had positive drug tests for methamphetamine, amphetamine, marijuana, and buprenorphine; sporadic participation in treatment; relapses despite completing inpatient treatment twice; and instability in housing, employment, transportation, and her relationships. Her criminal history includes drug offenses and other misdemeanor convictions.

Six weeks before trial, the mother was unresponsive on the floor of the grandmother's home while "the children were jumping on her," possibly indicating drug abuse or overdose. The HHS case manager testified that her appearance also raised concerns about continued substance abuse as she was picking at scabs on her face, had a recently broken tooth, and had bruising on her body.

HHS offered the mother services and treatment options with the goal of reunification. The case manager testified about four areas the mother needed to address: stability, sobriety, mental health, and safety and supervision of the children. But the mother made no meaningful progress toward these goals and blamed HHS. As of the termination trial, she was homeless, hadn't followed through with testing or treatment, failed to address her mental-health diagnoses and medications, and surrounded herself with known drug users. And when asked if the fugitive driver of the car she was in during a high-speed police chase was a safe person to be with, she replied: "I suppose. We didn't crash." In her own words, "the State has made [her] homeless," but she "took the easy way out," "cut corners," has "not complied," and "didn't follow through on . . . everything."

S.L.'s father met the child a total of three times—once at birth and twice when the mother was out of a recovery center. S.L. has never been in her father's custody, and the juvenile court determined he abandoned the child. He has been incarcerated nearly all of S.L.'s life. He testified that he would soon be paroled to a sober living home, but S.L. could not live with him "for at least six to eight months." He provided very little financial support, completed a parenting course from jail, and minimally engaged in HHS services.

The juvenile court heard testimony regarding a former case worker who worked on the case for approximately two months, failed to provide parenting education, and did not fully supervise the mother for "quite a bit of" visits. The case worker messaged the mother that he would "rather get in trouble[] than see[] you lose your rights" and discussed ways for the mother to help him "cover up" his lack of supervision. Once the grandmother reported it, HHS took immediate action and removed the case worker. The mother's counsel acknowledged that the mother did not report the case worker falsifying records because it meant she got more unsupervised time with the children.

The children were doing well in their relative placement and were adoptable. At trial, the mother and S.L.'s father advocated for a guardianship with the grandmother. The county attorney, HHS, and the children's guardian ad litem (GAL) all recommended termination of parental rights. The GAL emphasized concerns that the mother could not be a full-time parent and that she failed to take accountability for her lack of progress in regaining custody. And she highlighted that S.L's father "has no real relationship with [the child]," that S.L. "doesn't really know him as her father," and that reunification is impracticable with his incarceration.

The juvenile court terminated the mother's parental rights to the children under Iowa Code section 232.116(1)(f) (concerning the oldest child), (h) (concerning the younger two children), and (*l*) (2025), reasoning that the mother was unwilling to seek treatment or take advantage of HHS services; the mother still appeared to be abusing substances up to the trial; she failed to take accountability for her homelessness, unemployment, mental health, and

substance abuse; and her "tumultuous and chaotic" relationship with the grandmother is not "stable enough for guardianship." The court terminated S.L.'s father's parental rights under section 232.116(1)(b), (e), and (h), reasoning he had been incarcerated most of S.L.'s life, had no relationship or significant contact with S.L., and could not take custody of S.L. as of trial. The mother and S.L.'s father separately appeal, and we review de novo. *See In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012).

## II. The Mother's Appeal

The mother raises five claims: two on the statutory grounds for termination; whether reasonable efforts were made to reunify the family; whether termination is in the children's best interests, and whether the permissive bond exception should have precluded termination. We consider each.

**Statutory Grounds.** "When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record." *Id.* at 774. We hold the mother's parental rights were properly terminated under Iowa Code section 232.116(1)(f) and (h) and thus decline to reach the mother's arguments about a severe substance-use disorder as it relates to paragraph (*l*). The grounds in (f) and (h) are similar, and the mother only challenges element four of each: whether clear and convincing evidence established the children could not be returned to the custody of the parents as of trial. *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010).

In her petition on appeal, she argues the familial relationship between her, the children, and the grandmother warrants having legal custody while the children remain with the grandmother until she secured her own housing. But this assertion

supports, rather than defeats, the statutory grounds. The children could not safely return to her custody as of the trial date. She was homeless following an eviction, "couch surfing" with unsafe individuals, and had not meaningfully addressed her mental-health, substance-abuse, and employment problems. And while the mother expressed optimism she could improve in these areas, she admitted at trial the children could not be returned to her custody as of trial. We have also repeatedly recognized that substance abuse—particularly methamphetamine—is dangerous when it comes to child welfare, and we see no reason to conclude the mother's substance abuse is resolved. *See, e.g.*, *In re J.P.*, No. 19-1633, 2020 WL 110425, at *2 (Iowa Ct. App. Jan. 9, 2020) ("A parent's methamphetamine use, in itself, creates a dangerous environment for children."). The statutory grounds for termination were established by clear and convincing evidence under section 232.116(1)(f) and (h).

**Reasonable Efforts.** The mother argues HHS did not provide reasonable efforts toward reunification because a previous case worker did not provide parenting education and did not supervise visits. The juvenile court rejected this argument below, as do we on appeal. "Although [HHS] must make reasonable efforts in furtherance of reunification, with some exceptions not applicable here, parents have a responsibility to object when they claim the nature or extent of services is inadequate." *In re L.M.*, 904 N.W.2d 835, 839–40 (Iowa 2017) (footnote omitted). "A parent's objection to the sufficiency of services should be made early in the process so appropriate changes can be made." *Id.* at 840 (cleaned up).

Here, the mother did not make specific objections to services before the termination trial. Nor did she report the case worker's inappropriate actions

because they directly benefited her. As a result, the mother waived her reasonable-efforts challenge. *See id.* ("In general, if a parent fails to request other services at the proper time, the parent waives the issue and may not later challenge it at the termination proceeding." (citation omitted)).

But even if we found she didn't waive her challenge on appeal, the juvenile court correctly identified that the family had been provided significant services: "family-centered services since October 4, 2021, solution-based casework, solution focused meetings, staffings, family treatment court, parenting classes, inpatient and outpatient substance use treatment, drug testing, daycare assistance, medication management, mental health services, safety planning, domestic violence services, transportation assistance, sober living/transitional housing." And the court highlighted that the mother never requested additional or more intensive services. We are hard-pressed to find any lack of reasonable efforts even considering the former case worker's actions. And we have no reason to believe that additional parenting services by the former case worker would have changed the trajectory of this case.

**Best Interests.** The mother's petition on appeal conflates best interests with the permissive bond exception at section 232.116(3)(c). *See, e.g.*, *In re A.L.*, No. 22-0442, 2022 WL 1658699, at *3 (Iowa Ct. App. May 25, 2022) ("As many parents do, the mother conflates a best-interests argument with arguments about permissive factors weighing against termination."). Assuming without deciding a substantive best-interests claim is adequately presented, we reject it. In deciding children's best interests under the statute, we give primary weight "to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and

growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." Iowa Code § 232.116(2). The mother has been unwilling to meaningfully engage in the services provided to her and admitted multiple times at trial that she "gave up." Meanwhile, the children are well-integrated into the grandmother's home where they could be adopted. Termination is in the children's best interest.

**Bond Exception.** The permissive bond exception permits the court to decline termination if "termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Iowa Code § 232.116(3)(c). The mother bore the burden to prove this permissive exception by clear and convincing evidence. *In re A.S.*, 906 N.W.2d 467, 475–76 (Iowa 2018). We do not doubt the mother loves her children. But a parent's love is not enough to prevent termination, nor is the mere existence of a bond. *See In re A.B.*, 956 N.W.2d 162, 169–70 (Iowa 2021); *D.W.*, 791 N.W.2d at 709. And any potential detriment to the children by severing their bond with the mother is outweighed by the stability and safety afforded by termination and adoption. *See In re M.W.*, 876 N.W.2d 212, 225 (Iowa 2016) (noting we consider the bond in the context of a case's unique circumstances and the child's best interests).

### III. S.L.'s Father's Appeal

S.L.'s father raises four claims, three relating to each of the statutory grounds for termination and one regarding best interests.

**Statutory Grounds.** Because we may affirm on any of the three grounds, we choose to focus our analysis on section 232.116(1)(e). *See A.B.*, 815 N.W.2d at 774. Termination under this ground requires proof the father failed to "maintain[]

significant and meaningful contact with the child." The HHS case manager testified that S.L.'s father's only contact with HHS was returning a social history packet. And S.L.'s father testified that he has only met the child three times. The juvenile court noted he "had not taken any steps to inquire about [S.L.]'s welfare or become involved in these proceedings until he was appointed counsel." And that "he has not provided any emotional, physical or financial assistance to [S.L.]. He has not maintained significant and meaningful contact with [the child] and has made no reasonable efforts to resume care of her due to his incarceration." We agree with the juvenile court's conclusion that the State proved termination was warranted under section 232.116(1)(e).

**Best Interests.** We find the vague and scattered references to best interests in the father's petition are not adequate to raise a best-interests claim. *See, e.g., In re J.R.*, No. 22-1470, 2023 WL 2148760, at *3 (Iowa Ct. App. Feb. 22, 2023) ("sprinkled mentions" of an issue are insufficient to invoke appellate review). But even if the issue were adequately raised, we would reject it on the merits because S.L.'s father does not offer safety, nurturing, or prioritization of the child's physical, mental, or emotional needs. *See* Iowa Code § 232.116(2).

## IV.    Disposition

We affirm termination of the mother's rights to all three children and the termination of S.L.'s father's rights to S.L.

**AFFIRMED ON BOTH APPEALS.**