# IN THE COURT OF APPEALS OF IOWA

No. 25-0890
Filed September 17, 2025

**IN THE INTEREST OF H.H.,**
**Minor Child,**

**C.H., Mother,**
       Appellant,

**D.S., Father,**
       Appellant.
_____

Appeal from the Iowa District Court for Harrison County, David W. Brooks, Judge.

A mother and father separately appeal the termination of their parental rights. **AFFIRMED.**

Keith R. Tucker of Woods Tucker, PLLC, Glenwood, for appellant mother.

William T. Early, Harlan, for appellant father.

Brenna Bird, Attorney General, and Lisa Jeanes, Assistant Attorney General, for appellee State.

Abby L. Davison of the Office of the State Public Defender, Council Bluffs, attorney and guardian ad litem for minor child.

Considered without oral argument by Tabor, C.J., and Greer and Buller, JJ.

**BULLER, Judge.**

The mother and father separately appeal termination of their parental rights to a child born in 2017. We reject the mother's challenges to the statutory elements and child's best interests and the father's claim regarding reasonable efforts, and we affirm.

**Background Facts and Proceedings.**[1] The Iowa Department of Health and Human Services (HHS) first became involved with this family in May 2023 due to an ultimately-founded report the child had been sexually abused by a sibling. Later that same year, the then-five-year-old child was found wandering alone on multiple occasions, as much as a mile and a half from home, near busy highways, after having let herself out of the family's apartment. The subsequent HHS investigation revealed additional concerns, including that the mother's prescription medication and marijuana were stored in a place the child could access and that the child frequently visited a pond half a mile away unsupervised. In September, the mother agreed to a safety plan and to voluntarily place the child in foster care, where the child remained as of trial.

The child was adjudicated to be in need of assistance. And in the following months, the mother engaged in services, completed a mental-health evaluation, and followed through on at least some of the recommendations for individual therapy. She also participated in a parenting assessment that identified deficits, including cleanliness of the home. She was less successful in addressing these problems.

---

[1] Because the father does not challenge the statutory elements or best interests, we focus almost entirely on facts relating to the mother and the child.

Despite assistance from providers, the mother's apartment generally remained filthy and cluttered to the point it was barely navigable. And the mother had two dogs that she did not consistently clean up after. As an HHS worker described it: "[T]here's laundry piled up. You can't see the counters. Always bags of trash. There's animal feces and urine throughout the floor in the bedroom and in the living room which would be unsafe for a young child who plays on the floor." As recently as the month preceding trial, the apartment continued to smell of animal urine and an HHS worker observed fecal matter on the carpet despite the mother's claims she had shampooed and replaced the carpet. To the extent the mother made progress on this concern over the life of the case, it was "a couple steps forward, a couple steps back"—a struggle to maintain progress or long-term improvement. Even the mother admitted as of trial her work in this area was not done. The home's condition was consistently so bad visits could not take place there.

The mother also had trouble setting boundaries with unsafe men, which concerned HHS. At one point, a man moved into her apartment without permission while the case was pending and the mother was unable to get him to leave without HHS assistance. The department also had concerns about the mother's stepfather, who expressed sexual interest in the mother and therefore worried HHS and the mother with regard to the child's safety around him. Also, the father (and sometimes landlord) of the mother's current boyfriend was a registered sex offender.

The child also has a seizure disorder and requires "consistent and routine" medication. HHS was concerned the mother could not adequately manage this

condition, given her failure to supervise the child and history of exposing the child to unsafe adults.

The mother attended most weekly visits with the child, which remained fully supervised as of trial given the state of the mother's home. On at least one occasion, the mother's boyfriend—who was not approved to be there—was present for a visit without HHS permission or a completed background check. As of trial, the mother still had not installed a lock that would prevent the child from leaving the home while the mother was not paying attention.

While in the foster family's care for the seventeen months leading up to trial, the child was prescribed medication for ADHD and her wandering stopped. Her mental and physical health also generally improved while in foster care. For her part, the mother contributed to the foster family caring for the child by providing some financial assistance. But she also made some inappropriate comments, including promising the child that she would be living with the mother after the next court hearing (which was the termination trial).

Throughout the juvenile case, the father has been a combination of incarcerated in prison, on parole, and in a halfway house in Idaho. He has a history of significant methamphetamine use—and his incarceration was related to that use—but he testified he had been clean for a few months as of trial. He had been discharged from at least two halfway houses for failing to pay rent or follow the rules.

The attorney for the State, HHS, and the child's guardian ad litem all recommended termination of both parents' rights. The juvenile court terminated the mother's rights and the father's rights under Iowa Code section 232.116(1)(e)

and (f) (2025). In doing so, the court found the mother appeared to prioritize the comfort of her pets (and allowing them to urinate and defecate on the apartment floor) over the child's safety and wellbeing. And the court expressed concern that the mother seemed to be unable to administer the child's medication related to seizures and still had not installed a lock on the door.

The parents separately appeal the termination of their respective parental rights. We review de novo. *See In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021).

**Statutory Elements.** Although the mother challenges the statutory elements under both section 232.116(1)(e) and (f), we need find only one supported by the record to affirm. *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We focus our review on (f), the only element of which the mother challenges is whether the child could be safely returned to her custody as of trial. *See* Iowa Code § 232.116(1)(h)(4); *In re A.S.*, 906 N.W.2d 467, 473 (Iowa 2018).

First, we recognize our case law holds that a failure to progress beyond supervised visits is itself strong evidence that the child could not safely return as of trial—and the mother here never progressed to even semi-supervised visits. *See In re L.H.*, 13 N.W.3d 627, 629 (Iowa Ct. App. 2024). Second, we largely agree with the juvenile court's observations that, although the mother loves her child, she seemed unable to prioritize the child's safety. Obviously a home that consistently has urine and fecal matter on the floor for extended periods of time is not safe or sanitary for a seven-year-old child. And none of the men in the mother's life throughout this case are safe persons for the child. Third and last, we conclude the mother's failure to meaningfully remedy her parenting and supervisory deficits—or even install a lock to prevent the child's wandering—over the course

of almost a year and a half bodes poorly for her ability to safely parent as of trial. We conclude the statutory elements were supported by clear and convincing evidence.

**Best Interests.** The mother also claims termination is not in the child's best interests, emphasizing their bond and downplaying the safety concerns we've discussed elsewhere in this opinion. When we consider the best-interests prong of our termination framework, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). On this front, we agree with the attorney for the State below: "[W]hile I do believe that [the mother] cares about her daughter, I do not think that she can parent this child." That about sums it up: the mother by all accounts genuinely loves her daughter, but she struggles to even care for pets and is unable to provide the kind of long-term nurturing and growth this child needs—as evidenced by the child thriving in foster care. We agree with the juvenile court, it is in the child's best interests to terminate parental rights.

**Reasonable Efforts.** In his petition on appeal, the father raises the sole issue of whether HHS made reasonable efforts toward arranging visitation between himself and the child (which he suggests should have been done over the objection of the child's therapist). To preserve error on such a claim, parents must "object when they claim the nature or extent of services is inadequate," and they must generally do so before the termination trial. *In re L.M.*, 904 N.W.2d 835, 839–40 (Iowa 2017); *see also In re C.B.*, 611 N.W.2d 489, 493–94 (Iowa 2000). We have no transcripts of proceedings other than the termination trial, and there

is no indication in the pleadings—like a motion for reasonable efforts—that the father raised the issue before then. As a result, we doubt error was preserved.

But even if we were to assume without deciding error was preserved, we would not reverse termination based on the juvenile court's preference that visits be conducted in a therapeutic setting. *See In re M.B.*, 553 N.W.2d 343, 345 (Iowa Ct. App. 1996) ("[T]he nature and extent of visitation is always controlled by the best interests of the child[ren]."). In its written termination ruling, the juvenile court specifically found the following facts related to reasonable efforts:

- HHS arranged telephone visits early in the life of the case, as the father was in Idaho and in-person visits were not practicable. These visits were unsuccessful largely because the child had no memory of the father and "did not wish to participate."

- The father violating parole is a primary reason why he was unable to participate with additional services and move toward in-person visits with the child.

- The court considered the father's "behavior at the termination hearing and observed that he lacks the temperament to parent a child with [the child]'s behavioral issues."[2]

- "[The father] lacks credibility," based in part on false testimony regarding when he learned of the juvenile proceedings—he claimed to not know about the case for the first year despite personally participating in an early hearing and an HHS interview.

Unfortunately, the father does not really engage with any of these findings in his petition on appeal. We understand his complaint to be a generalized concern about visits. But as the father himself admits, he had not seen the child in person since she was two weeks old. And he was incarcerated or on parole in Idaho for

---

[2] Although we do not know the entire basis for the court's credibility observations, the transcript discloses the father becoming verbally combative during questioning, accusing others of lying, and at one point smoking or vaping during the virtual proceedings.

most of the case. He does not cite to us, and we are not aware of, any authority requiring HHS to facilitate his in-person travel to Iowa.

Even if we construe the father's petition to allege the more cognizable claim that he should have received more video or telephone visits, we agree with the juvenile court that the efforts made were reasonable under the circumstances. It was reasonable to discontinue the phone visits given the lack of prior relationship and lack of present interest expressed by the child, at least until attempting to connect was therapeutically beneficial. And it was reasonable to limit visits to those believed to be therapeutically appropriate, given the child's mental-health and behavioral history. Since the only source of therapeutic information in the record came from HHS describing communications from the child's therapist, who did not support any contact with the father, we cannot say the efforts made in this arena were unreasonable. *See M.B.*, 553 N.W.2d at 345 ("[T]he nature and extent of visitation is always controlled by the best interests of the child."). And last, we have no reason to believe that additional phone visits would have changed the underlying dynamics in which the father has been voluntarily absent from the child's life to such an extent he does not even challenge the statutory-elements or best-interests findings on appeal. More video visits would not have changed the course of these proceedings.

**AFFIRMED ON BOTH APPEALS.**